[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 13-11175

_____

In re:  MICHAEL MORGAN,

Petitioner.

_____

ORDER FOR REHEARING EN BANC

_____

Before DUBINA, Chief Judge, TJOFLAT, CARNES, BARKETT, HULL, MARCUS, WILSON, PRYOR, MARTIN and JORDAN, Circuit Judges.

BY THE COURT:

The court having been polled at the request of one of the members of the Court and a majority of the Circuit Judges who are in regular active service not having voted in favor of it (Rule 35, Federal Rules of Appellate Procedure), the Suggestion of Rehearing En Banc is **DENIED.**

s/ JOEL F. DUBINA
CHIEF JUDGE

PRYOR, Circuit Judge, respecting the denial of rehearing en banc:

I write to respond to the dissents filed by three of my colleagues about the denial of a rehearing en banc. I continue to adhere to the view expressed by Judges Henry Friendly and Raymond Randolph that dissents from the denial of rehearing en banc, particularly where one did not participate in the decision, are "of dubious policy," United States v. Shaygan, 676 F.3d 1237, 1238 (11th Cir. 2012) (Pryor, J., respecting the denial of rehearing en banc) (quoting United States v. N.Y., New Haven & Hartford R.R. Co., 276 F.2d 525, 553 (2d Cir. 1960) (Friendly, J., concurring in the denial of reh'g en banc, joined by Lumbard, C.J.)), and that "denials of rehearing en banc are best followed by silence," id. (alteration omitted) (quoting Indep. Ins. Agents of Am. v. Clarke, 965 F.2d 1077, 1080 (D.C. Cir. 1992) (Randolph, J.)). But my colleagues do not share that view, and their dissents should not go unanswered. Lest anyone doubt the correctness of our decision in this matter, I must respond to five misunderstandings in the dissents that follow.

## I. BACKGROUND

Michael Morgan was one of "the principal leaders of an elaborate drug operation, dating back to 1988, that supplied, distributed and sold crack cocaine throughout Florida, Alabama, Mississippi, Georgia, and North and South Carolina." United States v. Mothersill, 87 F.3d 1214, 1217 (11th Cir. 1996). In the course of this drug operation, Morgan and his coconspirator, Patrick Howell,

2

plotted to rob a drug dealer named Alfonso Tillman.  Id.  Another coconspirator, Paul Howell, rented a car, and Patrick Howell arranged to purchase one kilogram of cocaine from Tillman.  Tillman left for the drug buy carrying the cocaine, an Uzi, and some cash.  He ended up riding around in the rental car driven by Patrick Howell, with Morgan in the rear right seat.  At some point during the drive, Morgan shot Tillman in the back of the head.  After Tillman slumped lifelessly in his seat, Morgan put the gun to Tillman's head and fired a second shot.  Patrick Howell and Morgan pushed the body out of the car and drove off with the cocaine, the Uzi, and the cash.  After the murder, several coconspirators attempted to clean up the rental car, but Morgan's ex-girlfriend and the mother of his child, Tammie Bailey, rode in the rental car and noticed blood and bullet holes in the interior.

As law enforcement officials investigated the Tillman murder, Paul Howell and Morgan became concerned that Bailey would report them to the authorities. Morgan offered a friend $1,000 to lure Bailey to a highway rest stop so he could kill her.  The friend, looking for a way to beg off, asked about Bailey's baby, who Morgan had fathered.  Morgan told her to bring the baby, too.  But the friend refused the money and began to avoid Morgan.  Paul Howell wired Bailey some money to drive to Ft. Lauderdale to see him, possibly to rehearse the statement she should give to police and possibly to kill her.  But Bailey spent the money on her new apartment instead and, when Paul Howell called to ask why she had not come

to Ft. Lauderdale, she told him that her baby was sick and she needed a microwave to warm the baby's milk. Paul Howell then constructed a pipe bomb to kill Bailey and placed the pipe bomb in a microwave oven, which he gift-wrapped for delivery to her. Id. at 1217–18. As another man drove the package to Bailey's house, he was stopped by Florida Highway Patrol Trooper James Fulford for speeding and arrested for operating a vehicle without a license. Id. at 1216. The driver consented to a search of the vehicle and, when Trooper Fulford opened the gift-wrapped package, the microwave exploded and killed him. Id.

Morgan, along with several of his coconspirators, was convicted in 1993 of various racketeering offenses, and the Tillman murder served as one of the underlying racketeering acts. The district court sentenced Morgan to life without parole under the then-mandatory sentencing guidelines. We affirmed Morgan's convictions on direct appeal. Id. at 1220. In 2004, Morgan filed his first motion to vacate, set aside, or correct his sentence, 28 U.S.C. § 2255, and alleged a violation of his right to confrontation under the decision of the Supreme Court in Crawford v. Washington, 541 U.S. 36, 124 S. Ct. 1354 (2004). The district court dismissed the motion, and we granted a certificate of appealability and affirmed. Morgan v. United States, 195 Fed. App'x 924 (11th Cir. 2006). In 2009, Morgan filed an "Appeal Motion Pursuant [to] Section 3742," which the district court dismissed as an unauthorized second or successive motion to vacate, correct, or set aside his

4

sentence. In 2011, Morgan filed his third motion to vacate, set aside, or correct his sentence and alleged three new claims: (1) a violation of Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000); (2) a wrongful denial of sentencing relief based on the retroactive reduction of the crack cocaine guidelines, 18 U.S.C. § 3582(c)(2); and (3) a violation of the Eighth Amendment based on the decision of the Supreme Court in Graham v. Florida, __ U.S. __, 130 S. Ct. 2011 (2010), that the Eighth Amendment prohibits the imposition of a life sentence for a juvenile offender who did not commit a homicide, id. at __, 130 S. Ct. at 2034. The United States moved to dismiss the motion based on Apprendi and Graham as untimely, responded to the claim under section 3582(c)(2) on the merits, and argued that Graham was inapplicable because Morgan was sentenced to life for a homicide offense. The district court denied relief under section 3582(c)(2), and referred the two constitutional claims to a magistrate judge, before whom they remain pending.

Twenty years after his conviction and following years of unsuccessful attempts to vacate his sentence, Morgan moved this Court to grant him the extraordinary opportunity of filing a fourth motion to vacate, set aside, or correct his sentence. Based on the decision of the Supreme Court in Miller v. Alabama, __ U.S. __, 132 S. Ct. 2455 (2012), Morgan argued that he was entitled to relief because he was sentenced to life imprisonment without the possibility of parole under the then-mandatory sentencing guidelines. But the standard Morgan must

5

meet to obtain leave to file his successive motion is demanding: we can grant his application only if we certify that he has made a prima facie showing that his motion contains a claim relying on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

We held that Morgan could not file his second or successive motion because Miller has not been made retroactive on collateral review by the Supreme Court. A prisoner may receive permission to file a second or successive motion to vacate, set aside, or correct a sentence when a decision of the Supreme Court creates a new rule of constitutional law that "prohibit[s] a certain category of punishment for a class of defendants." In re Moss, 703 F.3d 1301, 1303 (11th Cir. 2013) (quoting Penry v. Lynaugh, 492 U.S. 302, 330, 109 S. Ct. 2934, 2953 (1989), abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304, 122 S. Ct. 2242 (2002)). This precedent reflects the instruction of the Supreme Court that a rule may be made retroactive on collateral review by "[m]ultiple cases . . . if the holdings in those cases necessarily dictate retroactivity," id., and the rule that substantive rules apply retroactively, Schriro v. Summerlin, 542 U.S. 348, 351–52, 124 S. Ct. 2519, 2522 (2004). "[R]ules [that] prohibit[] a certain category of punishment for a class of defendants . . . regardless of the procedures followed" are substantive. Penry, 492 U.S. at 330, 109 S. Ct. at 2953.

6

We held that the rule established in <u>Miller</u> could not be considered a substantive rule. <u>Miller</u> did not "h[o]ld, as a substantive matter, that the Eighth Amendment prohibits the [imposition of life without parole for juvenile offenders] such as [Morgan] regardless of the procedures followed." See <u>id.</u> Instead, <u>Miller</u> held that "<u>mandatory</u> life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment[]" because "[s]uch a [sentencing] scheme prevents those meting out punishment from considering a juvenile's lessened culpability and greater capacity for change, and runs afoul of [the] requirement of individualized sentencing for defendants facing the most serious penalties." <u>Miller</u>, 132 S. Ct. at 2460 (emphasis added) (internal quotation marks and citation omitted). And the Supreme Court made clear that its decision "d[id] not foreclose a sentencer's ability to make t[he] judgment [that a juvenile offender should be sentenced to life imprisonment without the possibility of parole] in homicide cases." <u>Id.</u> at 2469. Instead, the rule established in <u>Miller</u> "require[d] [the sentencer] to take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison." <u>Id.</u> "[R]ules that regulate only the <u>manner of determining</u> the defendant's [sentence] are procedural." See <u>Summerlin</u>, 542 U.S. at 353, 124 S. Ct. at 2523. Because the rule established in <u>Miller</u> is not substantive and has not otherwise been

7

made retroactive by the Supreme Court, we concluded that Morgan could not bring a second or successive motion to vacate, set aside, or correct his sentence.

## II.  DISCUSSION

Although the panel decision involved a straightforward application of Supreme Court and Circuit precedent, three of my colleagues appear to misunderstand both the decision and our governing precedents.  The Supreme Court has drawn a clear distinction between substantive and procedural rules for the purpose of retroactive application on collateral review: substantive rules generally apply retroactively and procedural rules generally do not.  Notwithstanding the hyperbole in the dissents, the procedural nature of the rule established in Miller is not debatable.  En banc consideration of this question would be a waste of judicial resources.

 A.  *The Supreme Court Has Drawn a Clear Distinction Between Substantive and Procedural Rules for the Purpose of Retroactive Application on Collateral Review.*

"New rules" of constitutional law do not apply retroactively to criminal cases that have become final before the rule was announced, unless the new rule falls within one of two narrow exceptions.  See Teague v. Lane, 489 U.S. 288, 308, 109 S. Ct. 1060, 1074 (1989) (plurality opinion).  The first exception permits the retroactive application of "[n]ew substantive rules."  Summerlin, 542 U.S. at 351, 124 S. Ct. at 2522.  The second exception authorizes the retroactive application of "a small set of watershed rules of criminal procedure implicating the fundamental

8

fairness and accuracy of the criminal proceeding." Id., 124 S. Ct. at 2523 (internal quotation marks omitted). But the Supreme Court has instructed us that "[t]his class of rules is extremely narrow," id., and that "[n]ew rules of procedure . . . generally do not apply retroactively," id.; see also Howard v. United States, 374 F.3d 1068, 1080 (11th Cir. 2004) ("The lesson of all these decisions, we believe, is that the second Teague exception is so tight that very few new rules will ever squeeze through it.").

This distinction drawn by the Supreme Court between substantive and procedural rules makes sense. Substantive rules "apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." Summerlin, 542 U.S. at 352, 124 S. Ct. at 2522–23 (internal quotation marks omitted). New rules of procedure, on the other hand, "do not produce a class of persons convicted of conduct the law does not make criminal, [or sentenced to a punishment that the law cannot impose upon them,] but merely raise the possibility that someone convicted [or sentenced] with use of the invalidated procedure might have been acquitted [or sentenced] otherwise." See id. Given this "speculative connection" to innocence or to the receipt of a lesser sentence, id., it makes sense not to require the federal or state governments to expend resources on new trials and new sentencing proceedings every time that the Supreme Court

9

announces a new procedural rule.  Only those watershed rules of criminal procedure that implicate the fundamental fairness and accuracy of the proceeding deserve retroactive effect.  See id., 124 S. Ct. at 2523.  As the Supreme Court has explained, "That a new procedural rule is 'fundamental' in some abstract sense is not enough; the rule must be one without which the likelihood of an accurate conviction is seriously diminished."  Id. (internal quotation marks omitted).

And the distinction between substantive and procedural rules reflects the interest of the state and federal courts in the finality of judgments.  See Teague, 489 U.S. at 308, 109 S. Ct. at 1074.  "Application of constitutional rules not in existence at the time a conviction became final seriously undermines the principle of finality which is essential to the operation of our criminal justice system.  Without finality, the criminal law is deprived of much of its deterrent effect."  Id. at 309, 109 S. Ct. at 1074.  "No one, not criminal defendants, not the judicial system, not society as a whole is benefited by a judgment providing a man shall tentatively go to jail today, but tomorrow and every day thereafter his continued incarceration shall be subject to fresh litigation on issues already resolved."  Mackey v. United States, 401 U.S. 667, 691, 91 S. Ct. 1160, 1179 (1971) (Harlan, J., concurring in judgments in part and dissenting in part).  And "[t]he costs imposed upon the State[s] [and the federal government] by retroactive application of new rules of constitutional law on habeas corpus . . . generally far outweigh the

10

benefits of this application." See Solem v. Stumes, 465 U.S. 638, 654, 104 S. Ct. 1338, 1347–48 (1984) (Powell, J., concurring in the judgment). For these reasons, the Supreme Court has limited the application of new constitutional rules on collateral review of criminal convictions to those rules that "necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him." See Summerlin, 542 U.S. at 352, 124 S. Ct. at 2522–23 (internal quotation marks omitted). Miller is not that kind of rule, and Morgan may not benefit from it on collateral review.

## B. Notwithstanding the Misunderstandings in the Dissents, the Rule Established in Miller Is Procedural.

The dissents reflect an astonishing number of fundamental misunderstandings about the circumstances in which a prisoner may obtain the benefits of a new rule of constitutional law on federal collateral review. I count at least five of these misunderstandings, and the error of each argument is apparent.

First, all three of the dissenters labor under the misconception that, if a rule might have affected the sentence imposed upon a defendant, that rule must be substantive. Judge Barkett's dissent argues that the rule in Miller must be substantive because, "[b]efore Miller, a juvenile offender convicted of certain crimes would automatically receive a sentence of life without the possibility of parole; after Miller, the vast majority of such offenders will receive a substantively

11

different and lesser sentence." Dissenting Op. of Barkett, J., at 27. Judge Wilson and Judge Martin's dissent argues that, "to write off as merely procedural a new rule that will compel a different substantive result—that is, a different, and lesser, sentence—in the majority of cases that will follow would be to stretch the meaning of 'procedural' too far." Dissenting Op. of Wilson, J., & Martin, J., at 32–33. But that a different result is likely under a new rule does not make that rule substantive. Although all new constitutional rules are likely to produce different results in at least some circumstances, the Supreme Court has explained that only some of these rules apply retroactively. Substantive rules "apply retroactively because they 'necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal' or faces a punishment that the law cannot impose upon him," Summerlin, 542 U.S. at 352, 124 S. Ct. at 2522–23 (quoting Bousley v. United States, 523 U.S. 614, 620, 119 S. Ct. 1604, 1610 (1998) (internal quotation marks omitted)). And a rule is substantive only if it is a "substantive categorical guarantee[] accorded by the Constitution, regardless of the procedures followed." See Penry, 492 U.S. at 329, 109 S. Ct. at 2952 (emphasis added). No other kind of rule "carr[ies] a significant risk that a defendant . . . faces a punishment that the law cannot impose upon him." Summerlin, 542 U.S. at 352, 124 S. Ct. at 2522–23 (emphasis added). And Miller does not implicate a substantive categorical

12

guarantee because a juvenile offender may still be sentenced to life imprisonment without the possibility of parole after Miller.

And the speculation of the dissenters about the likely effect of Miller in any particular case underscores the procedural nature of the rule. Judge Barkett's dissent speculates that Miller will result in reduced sentences for the "vast majority" of juvenile offenders. Dissenting Op. of Barkett, J., at 27. Judge Wilson and Judge Martin's dissent speculates that the rule "will compel a different substantive result . . . in the majority of cases that will follow." Dissenting Op. of Wilson, J., & Martin, J., at 32–33 (emphasis added). And Judge Wilson and Judge Martin's dissent makes much of the speculation of the majority in Miller that the rule established in that decision would make sentences of life imprisonment for juvenile offenders uncommon. See id. But the Supreme Court has explained that, when the effect of a rule in any particular case is speculative, the rule is procedural. See Summerlin, 542 U.S. at 352, 124 S. Ct. at 2523. We can only speculate about the effect of Miller in any particular case because, after that decision, juvenile offenders may still be sentenced to life imprisonment without the possibility of parole. Judge Wilson and Judge Martin argue that "[t]here is nothing 'speculative' about the fact that [these juvenile offenders], judged by today's standards, would likely receive a lesser sentence." Dissenting Op. of Wilson, J., & Martin, J., at 34

13

(emphasis added).  But that statement is speculative on its face, and a rule whose effect is merely "likely" is procedural, not substantive.

Second, the dissenters argue that <u>Miller</u> may be substantive because it expands the possible sentencing outcomes for juvenile offenders who were previously subject to mandatory life imprisonment without the possibility of parole, but that argument is foreclosed by Supreme Court precedent.  Judge Barkett's dissent asserts that the rule in <u>Miller</u> is substantive because it "expanded the range of possible substantive sentencing outcomes for juvenile offenders." Dissenting Op. of Barkett, J., at 27.  Judge Wilson and Judge Martin's dissent asserts less confidently that, "[b]y altering the range of possible outcomes for a juvenile sentenced to life without parole under a mandatory sentencing scheme, <u>Miller</u> arguably heralds a substantive rule."  Dissenting Op. of Wilson, J., & Martin, J., at 32.  But the Supreme Court has explained that a new rule is procedural, not substantive, when it does not "alter the range of conduct . . . subjected to [a punishment]," but instead "alter[s] the range of permissible methods for determining whether a defendant's conduct is punishable by [that punishment]."  <u>Summerlin</u>, 542 U.S. at 353, 124 S. Ct. at 2523.  <u>Miller</u> "altered [only] the range of permissible methods for determining whether a [juvenile offender's] conduct is punishable by [life without parole]."  <u>See id.</u>  One cannot reasonably contend otherwise.

14

Third, Judge Barkett's dissent displays a fundamental misunderstanding of the term "punishment." Judge Barkett's dissent argues that the rule established by the Supreme Court in Miller is substantive and retroactive on collateral review because it "prohibit[s] a certain category of punishment for a class of defendants because of their status or offense." Dissenting Op. of Barkett, J., at 26 (quoting Penry, 492 U.S. at 330, 109 S. Ct. at 2953). But Miller did not prohibit any category of punishment for juveniles. Punishment is defined as "[a] sanction—such as a fine, penalty, confinement, or loss of property, right, or privilege—assessed against a person who has violated the law." Black's Law Dictionary 1353 (9th ed. 2009). And Black's Law Dictionary cross-references "punishment" with "sentence," which is defined as "[t]he judgment that a court formally pronounces after finding a criminal defendant guilty; the punishment imposed on a criminal wrongdoer <a sentence of 20 years in prison>." Id. at 1485. Miller did not prohibit the punishment of life imprisonment without the possibility of parole for juvenile offenders, but only the mandatory procedure by which that punishment had been imposed. 132 S. Ct. at 2469. The attempt of Judge Barkett's dissent to define the word "punishment" to include a "mandatory life sentence" is contrary to the ordinary legal meaning of that word. See Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 73 (2012) ("[W]hen the law is the subject, ordinary legal meaning is to be expected . . . ."). A juvenile offender who

15

serves a life sentence without the possibility of parole imposed under a mandatory sentencing scheme receives the same punishment as a juvenile offender who serves a life sentence without the possibility of parole imposed under a discretionary sentencing scheme.

Fourth, Judge Wilson and Judge Martin's dissent confuses the rules of retroactivity that apply on federal collateral review with the rules of retroactivity that apply to state collateral review. Their dissent argues that the issue is close because "[t]here is great confusion amongst the courts of this country as to whether Miller applies retroactively." Dissenting Op. of Wilson, J., & Martin, J., at 36 & n.2. But the vast majority of the decisions cited by the dissent for this point were decisions by state courts on state collateral review. See id. In our system of dual sovereignty, state courts are free to apply whatever rules about retroactivity they prefer in their own collateral proceedings because the federal doctrine of non-retroactivity limits only the scope of federal collateral relief. Danforth v. Minnesota, 552 U.S. 264, 281, 128 S. Ct. 1029, 1041–42 (2008).

The decisions cited by Judge Wilson and Judge Martin's dissent are an excellent example of the variety of rules that states have adopted to decide whether to apply new rules of constitutional law retroactively on state collateral review. In State v. Lockheart, 820 N.W.2d 769, 2012 WL 2814378, (Iowa Ct. App. July 11, 2012) (unpublished table decision), the Iowa Court of Appeals vacated a

16

defendant's sentence on state collateral review for resentencing without any discussion of limits on the retroactive application of new constitutional rules under Iowa law and without any discussion of Teague. Id. at *4. In State v. Simmons, 99 So. 3d 28 (La. 2012), the Supreme Court of Louisiana ordered resentencing of a juvenile offender based on the decision of the Supreme Court in Miller, also without any analysis of Teague. Id.; see also State v. Williams, 108 So. 3d 255, 255–56 (La. Ct. App. 2013). In Commonwealth v. Cunningham, 51 A.3d 178 (Pa. 2012), and Ex parte Maxwell, 2013 WL 458168 (Tex. Crim. App. 2013), the Supreme Court of Pennsylvania and Court of Criminal Appeals of Texas, respectively, have ordered further briefing on the question whether they should apply Miller retroactively in their states on collateral review. See Cunningham, 51 A.3d at 178; Ex parte Maxwell, 2013 WL 458168, at *1. And an appellate court in Florida has determined that Miller is a procedural rule that should not be applied retroactively under Florida law. See Geter v. State, No. 3D12-1736, 2012 WL 4448860, at *9–*10 (Fla. Dist. Ct. App. Sept. 27, 2012).

Judge Wilson and Judge Martin's dissent cites decisions from only two states that even purport to consider Teague. In one of these decisions, the Michigan Court of Appeals reasoned that Miller is a procedural rule that is not retroactive on federal collateral review, and then applied state rules for retroactivity to conclude that nothing under Michigan law rendered Miller

17

retroactive on state collateral review.  See People v. Carp, 828 N.W.2d 685, 713–14 (Mich. Ct. App. 2012).  In three other decisions, the Illinois Court of Appeals purported to apply the Teague analysis, but reached wildly different and, indeed, inconsistent results: one decision held that Miller was a substantive rule under Teague, People v. Morfin, 981 N.E.2d 1010, 1022 (Ill. App. Ct. 2012), one decision held that Miller was a watershed rule of criminal procedure under Teague, People v. Williams, 982 N.E.2d 181, 196 (Ill. App. Ct. 2012), and one decision agreed with both of those conclusions, People v. Cooks, No. 1-11-2991, 2013 WL 1195435, at *5 (Ill. Ct. App. 2012), even though the Supreme Court has made clear that those categories are separate and distinct, Summerlin, 542 U.S. at 351–52, 124 S. Ct. at 2522–23.

But federal courts are bound by Supreme Court precedents on the availability of new constitutional rules to prisoners on federal collateral review.  And the only other circuit court to have addressed the question and explained its analysis agrees that "Miller does not satisfy the test for retroactivity because it does not categorically bar all sentences of life imprisonment for juveniles."  Craig v. Cain, No. 12-30035, 2013 WL 69128, at *2 (5th Cir. 2013).  Judge Wilson and Judge Martin's dissent argues that two recent orders entered by the Fourth Circuit support their argument that the rule in Miller may be substantive, but those unpublished orders are not persuasive.  See In re Landry, No. 13-247 (4th Cir. May

18

30, 2013); In re James, No. 12-287 (4th Cir. May 10, 2013).  Those orders offer no reasoning or explanation for the decisions to allow the prisoners to file second or successive petitions.  See In re Landry, No. 13-247 (4th Cir. May 30, 2013); In re James, No. 12-287 (4th Cir. May 10, 2013).  Notably, and contrary to the assertion of the dissent, the prisoner in In re James who sought permission to file a second or successive motion asserted that his second or successive motion involved claims based on both "newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense," and "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court of the United States, that was previously unavailable."  See 28 U.S.C. § 2255(h).  We cannot conclude, as Judge Wilson and Judge Martin's dissent asserts, that the Fourth Circuit held that Miller was a new rule of constitutional law, made retroactive by the Supreme Court to cases on collateral review, because the Fourth Circuit offered no explanation for its decision.  Contra Dissenting Op. of Wilson, J., and Martin, J., at 38–40.  And in In re Landry, the prisoner argued that the rule established in Miller was substantive and, in the alternative, that the rule established in Miller constituted a watershed rule of criminal procedure.  See In re Landry, No. 13-247 (4th Cir. May 30, 2013).  Again, we cannot determine whether the Fourth Circuit determined that the

19

prisoner had made a prima facie showing that the rule in Miller was retroactive on collateral review because it was substantive, because it was a watershed rule of criminal procedure, or for some other reason. These two orders and the dictum in the footnote of a single opinion of a federal district court, see Hill v. Snyder, No. 10-14568, 2013 WL 364198, at *2 n.2 (E.D. Mich. Jan. 30, 2013), hardly support the proposition that "great confusion" exists among the federal courts on the retroactive application of Miller.

Finally, my dissenting colleagues devote considerable attention to the position taken by the United States Department of Justice in a proceeding before the Eighth Circuit that the rule established in Miller is substantive, but that position has no bearing on our consideration of the question. The bar on second or successive motions is jurisdictional, see Panetti v. Quarterman, 551 U.S. 930, 942, 127 S. Ct. 2842, 2852 (2007), so we must determine whether an application to file a second or successive motion is based on a claim involving "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable," 28 U.S.C. § 2255(h)(2). The United States could not concede this legal issue, even if it had taken that position before this Court. See Gilbert v. United States, 640 F.3d 1293, 1306 n.14 (11th Cir. 2011) (citing Roberts v. Galen of Va., Inc., 525 U.S. 249. 253, 119 S. Ct. 685 687 (1999)). And the attempt of the United States to concede this jurisdictional issue

before our Court would be of particular concern because a holding that <u>Miller</u> is substantive would bind future panels in proceedings involving state prisoners. <u>Compare</u> 28 U.S.C. § 2255(h)(1) <u>with</u> <u>id.</u> § 2244(b)(2)(A).  If the Executive wants to give juvenile offenders relief after <u>Miller</u>, he can commute the sentences of juvenile offenders who were sentenced to life imprisonment without parole under mandatory sentencing schemes in the federal system.  <u>See</u> U.S. Const. Art. II, § 2. But we cannot accept the attempt by the United States to concede a jurisdictional issue that must be resolved to the contrary under binding precedent of the Supreme Court.

### C.  En Banc *Consideration of a Decision that Is Undoubtedly Correct Would Be a Waste of Judicial Resources.*

Two of my colleagues, though not prepared to declare that the rule established by <u>Miller</u> is substantive, argue that the matter should be considered <u>en banc</u> because it presents "a question of exceptional importance," but <u>en banc</u> consideration of this issue, no matter how important, would be a waste of judicial resources.  A precedent of a panel of this Circuit is as binding as a precedent of the <u>en banc</u> Court.  <u>Smith v. GTE Corp.</u>, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001) ("Under the well-established prior panel precedent rule of this Circuit, the holding of the first panel to address an issue is the law of this Circuit, thereby binding all subsequent panels unless and until the first panel's holding is overruled by the Court sitting en banc or by the Supreme Court."); <u>see also</u> <u>United States v. Steele</u>,

21

147 F.3d 1316, 1318 (11th Cir. 1998) (en banc) ("[A] panel cannot overrule a prior one's holding even though convinced it is wrong.").  We have the discretion to consider en banc an appeal or other proceeding when that consideration "is necessary to secure or maintain uniformity of the court's decisions" or when "the proceeding involves a question of exceptional importance."  Fed. R. App. 35.  In my view, we should not exercise that discretion when the analysis and decision of a panel is undoubtedly correct.  The deliberation by the en banc Court on a question that has been correctly considered and resolved by a panel would consume precious judicial resources and result in a decision that is no more binding or correct than the panel opinion.

This Court often decides issues of exceptional importance without granting en banc review.  For example, when 26 states challenged the constitutionality of the Affordable Care Act and moved this Court to grant en banc review, we denied their request even though the challenged Act involved an unprecedented exercise of federal power to compel citizens to purchase health insurance and to require state governments to expand their Medicaid programs.  See Fla. ex rel. Att'y Gen. v. U.S. Dep't of Health & Human Servs., 648 F.3d 1235, 1240–41 (11th Cir. 2011), overruled in part by Nat'l Fed'n of Indep. Bus. v. Sebelius, __ U.S. __, 132 S. Ct. 2566 (2012).  And when we granted a writ of mandamus to prevent a district court from compelling a cabinet-level official to attend a hearing when another

22

presidential appointee was available to represent the agency, we did not rehear that appeal en banc.  See In re United States, 624 F.3d 1368, 1369–70 (11th Cir. 2010).

In our democratic republic, where the right to vote is fundamental, we routinely decide appeals about elections and voting without granting en banc review.  For example, when we preliminarily enjoined Florida from increasing its subsidy of the campaign of a gubernatorial candidate who had accepted public funding because the increased subsidy unfairly penalized the free speech of an opponent who had declined public funding, we did not vote to rehear that appeal en banc.  See Scott v. Roberts, 612 F.3d 1279, 1281–82 (11th Cir. 2010).  When we upheld the Georgia law that requires voters to present photo identification to poll workers, we did not rehear that appeal en banc.  See Common Cause/Ga. v. Billups, 554 F.3d 1340, 1345 (11th Cir. 2009).  And when we affirmed first the preliminary and later the permanent injunction against counting unverified absentee ballots in the 1994 election of the Chief Justice of Alabama, we did not rehear en banc either of those two appeals.  See Roe v. Alabama, 68 F.3d 404, 409 (11th Cir. 1995); Roe v. Alabama, 49 F.3d 734 (11th Cir. 1995).

We also have declined to grant en banc review in matters of church and state.  For example, when we affirmed the decision that permitted the Cobb County Commission to continue its practice of legislative prayer to begin its meetings, we did not rehear that appeal en banc.  See Pelphrey v. Cobb Cnty., Ga., 547 F.3d

23

1263, 1266–67 (11th Cir. 2008).  And when we affirmed an injunction that required the Chief Justice of Alabama to remove a monument of the Ten Commandments from the Alabama State Judicial Building, we did not rehear that appeal en banc.  See Glassroth v. Moore, 335 F.3d 1282, 1284 (11th Cir. 2003).

The same is true in sensitive matters of foreign relations, immigration, and terrorism.  When the Executive deported Elian Gonzalez to Cuba, after his mother had died at sea escaping that Communist regime, we refused to rehear the denial of the petition to review that order of deportation.  See Gonzalez ex rel. Gonzalez v. Reno, 215 F.3d 1243, 1245–46 (11th Cir. 2000).  We also denied en banc review to the appeal of a former Panamanian dictator who unsuccessfully challenged his extradition to France.  See Noriega v. Pastrana, 564 F.3d 1290, 1292 (11th Cir. 2009).  And we did not rehear en banc the decisions that invalidated several provisions of immigration laws in Alabama and Georgia.  See United States v. Alabama, 691 F.3d 1269, 1301 (11th Cir. 2012); Ga. Latino Alliance for Human Rights v. Governor of Ga., 691 F.3d 1250, 1269 (11th Cir. 2012); Hispanic Interest Coal. of Ala. v. Governor of Ala., 691 F.3d 1236, 1241 (11th Cir. 2012).  Nor did we rehear en banc the decision that, for the first time among the circuit courts, interpreted the power of Congress to define and punish "Offences against the Law of Nations" and declared unconstitutional the Maritime Drug Law Enforcement Act as applied to defendants who had engaged in drug trafficking in the territorial

24

waters of Panama.  See United States v. Bellaizac-Hurtado, 700 F.3d 1245, 1247 (11th Cir. 2012).  And we denied rehearing en banc of the appeal in which we affirmed the conviction of Jose Padilla for various offenses related to terrorism and vacated his sentence as unreasonably lenient.  See United States v. Jayyousi, 452 F. App'x 943 (11th Cir. 2011).

Even in matters of life and death, we rarely grant en banc review.  For example, when the parents of Terri Schiavo petitioned this Court to rehear their appeals of the decisions not to enjoin her starvation and death, we denied their requests, notwithstanding their obvious importance.  Schiavo ex. rel. Schindler v. Schiavo, 404 F.3d 1270 (11th Cir. 2005); Schiavo ex. rel. Schindler v. Schiavo, 403 F.3d 1261 (11th Cir. 2005).  And we have reviewed dozens of death sentences each year without rehearing those appeals en banc, save for the rare circumstance where it has been necessary to maintain the uniformity of our precedents.  See, e.g., Evans v. Sec'y, Dep't of Corr., 703 F.3d 1316 (11th Cir. 2013) (en banc).

The dissents that follow offer no good reason to rehear this matter en banc. The panel decision is plainly right.  We have declined to review myriad decisions that were of equal or even greater importance, and granting en banc review of this matter would waste precious judicial resources.

BARKETT, Circuit Judge, dissenting from the denial of rehearing en banc:

I completely agree with Judge Wilson that this case is one that should be reheard en banc. However, I do so because I believe the panel opinion makes a critical mistake in holding that the rule established in Miller v. Alabama, 132 S. Ct. 2455 (2012), is procedural. In my view, the rule established in Miller, which prohibits mandatory life sentences without the possibility of parole for juvenile offenders, is substantive rather than procedural and, thus, can be the basis for a second or successive habeas petition under 28 U.S.C. § 2255(h).

The Supreme Court has established that a rule is substantive if it "prohibit[s] a certain category of punishment for a class of defendants because of their status or offense." Penry v. Lynaugh, 492 U.S. 302, 330 (1989), abrogated on other grounds by Atkins v. Virginia, 536 U.S. 304 (2002). In my view, this is precisely what Miller did. It "prohibit[ed]" mandatory sentences of life imprisonment without the possibility of parole for "a class of defendants"—juvenile offenders— "because of their status." Id. The panel opinion holds the Miller rule to be procedural simply because, in certain circumstances, a court may still impose a life sentence on a juvenile offender. But that misses the point. An automatic mandatory life sentence without the possibility of parole is a category of punishment that the Supreme Court has found to be substantively unacceptable for juvenile offenders.

26

The panel opinion relies heavily on the Supreme Court's statement in Schriro v. Summerlin, 542 U.S. 348 (2004), that "rules that regulate only the manner of determining the defendant's culpability are procedural." Id. at 353. However, it is a stretch to say that Miller changed only the manner of determining a defendant's sentence. Miller expanded the range of possible substantive sentencing outcomes for juvenile offenders by categorically prohibiting one category of punishment—mandatory life sentences—for that category of defendants. This change cannot be simply a matter of procedure. Before Miller, a juvenile offender convicted of certain crimes would automatically receive a sentence of life without the possibility of parole; after Miller, the vast majority of such offenders will receive a substantively different and lesser sentence. See Miller, 132 S. Ct. at 2496 ("[W]e think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.").

It is unreasonable to conclude that all juvenile offenders like Morgan who were sentenced to mandatory life sentences without the possibility of parole and who, had they been sentenced after Miller, would have almost certainly received a lesser sentence, now have no avenue of relief. As I have said previously, we cannot interpret AEDPA's procedural hurdles as mandating us to turn a blind eye to constitutionally-flawed sentences. See In re Hill, No. 13-10702, slip op. at 50 (11th Cir. Apr. 22, 2013) (Barkett, J., dissenting) ("[I]t simply cannot be that

27

Congress would have intended AEDPA to preclude a federal court from hearing the claim of a juvenile or mentally retarded offender who obtains, albeit after the conclusion of his prior federal habeas proceedings, irrefutable proof that his status constitutionally bars his execution forever."); see also Herrera v. Collins, 506 U.S. 390, 402 (1993) ("[F]ederal habeas courts act in their historic capacity—to assure that the habeas petitioner is not being held in violation of his or her federal constitutional rights."). But by prohibiting Morgan from attacking his mandatory life sentence on collateral review—a sentence that the Supreme Court held violates the Eighth Amendment's prohibition of cruel and unusual punishment—that is exactly what the panel opinion would have us do. At the very least, this case merits consideration by the entire Court.

WILSON, Circuit Judge, dissenting from the denial of rehearing en banc, in which MARTIN, Circuit Judge, joins:

For crimes he committed between the ages of 13 and 17, Michael Morgan was sentenced to mandatory life in prison without the possibility of parole. Such a sentence would be unconstitutional were it handed down today. In *Miller v. Alabama*, ––– U.S. ––––, 132 S. Ct. 2455, 2460 (2012), the Supreme Court held that sentences of "mandatory life without parole for those under the age of 18 at the time of their crimes violates the Eighth Amendment's prohibition on 'cruel and unusual punishments.'" This case concerns Morgan's application to file a second or successive petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. We will grant an application to file a second or successive petition if the applicant makes a prima facie showing that his second or successive motion contains a claim involving "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

In the original panel order, we denied Morgan's application, holding that while *Miller* announced a new rule of constitutional law, the rule was not retroactive to cases on collateral review because it did not "'prohibit[] a certain category of punishment for a class of defendants.'" *In re Morgan*, — F.3d —, No. 13-11175, 2013 WL 1499498, at *3 (11th Cir. Apr. 12, 2013) (quoting *In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013)). But although the rule enunciated in *Moss*

29

describes one category of rules that has been held to apply retroactively, *Moss*'s rule is not exhaustive; in fact, the Supreme Court has instructed that the true inquiry for determining whether a given rule is retroactive to cases on collateral review hinges upon whether that new rule is procedural or substantive: "New *substantive* rules generally apply retroactively . . .[;] [n]ew rules of procedure . . . do not." *Schriro v. Summerlin*, 542 U.S. 348, 351–52, 124 S. Ct. 2519, 2522–23 (2004) (emphasis in original). The resolution of Morgan's application thus turns on whether *Miller*'s rule is substantive or procedural. A majority of the Court today concludes that this question is not sufficiently important to warrant en banc review. I cannot agree. Because I believe this case readily presents "a question of exceptional importance" worthy of en banc review, Fed. R. App. P. 35(a)(2), I dissent.

The United States Department of Justice has decided upon a uniform policy—its United States Attorneys will advocate *in favor* of *Miller*'s retroactivity in cases on collateral review all across the country. Government's Response to Petitioner's Application for Authorization to File a Second or Successive Motion Under 28 U.S.C. § 2255 at 6–7, *Johnson v. United States*, No. 12-3744 (8th Cir. Feb. 22, 2013) ("*Miller*'s holding that juvenile defendants cannot be subjected to a mandatory life-without-parole sentence is properly regarded as a substantive rule."); *see* Motion of the United States for a Further Extension of Time at 1,

*Johnson v. United States*, No. 12-3744 (8th Cir. Jan. 29, 2013) ("Because the issue has nationwide application, the Department of Justice is formulating the government's position on retroactivity rather than individual U.S. Attorney's Offices."). That is, *not even the government* wants these juvenile offenders—who are condemned to die in prison pursuant to now-unconstitutional sentencing schemes—deprived of their ability to seek the writ of habeas corpus. *See* Government's Response to Petitioner's Application for Authorization to File a Second or Successive Motion Under 28 U.S.C. § 2255 at 2, *Johnson v. United States*, No. 12-3744 (8th Cir. Feb. 22, 2013) ("Because the United States agrees that Johnson's reliance on *Miller* makes . . . a prima facie showing, his motion should be granted and the case certified for filing in the district court."). If the availability of the writ to Morgan and the hundreds of similarly situated juvenile offenders serving mandatory life-without-parole sentences that would be indubitably unconstitutional were they handed down today is not a question of exceptional importance, I cannot imagine what is.[1]

Nor is the argument that *Miller* announces a substantive rule a frivolous one. "A rule is substantive rather than procedural if it alters the range of conduct or the

---

[1] As of April 20, 2011, there were 336 juvenile offenders serving life without parole within our circuit. *See Sentencing Juveniles*, N.Y. Times, Apr. 20, 2011, http://www.nytimes.com/interactive/2011/04/20/us/ juveniles.html?ref=u&_r=0 (explaining that there are 266 such offenders in Florida, 62 in Alabama, and 8 in Georgia). Of those 336 offenders, 17 of them are 13- or 14-year-olds. *Id.*

class of persons that the law punishes." *Schriro*, 542 U.S. at 353, 124 S. Ct. at 2523. I agree that the rule announced by *Miller* does not fit neatly within our understanding of a substantive rule. *See Teague v. Lane*, 489 U.S. 288, 307, 109 S. Ct. 1060, 1073 (1989) ("[A] new rule should be applied retroactively if it places certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe." (internal quotation marks omitted)). But neither does *Miller*'s rule fit neatly within our definition of a procedural rule. *See Schriro*, 542 U.S. at 353, 124 S. Ct. at 2523 (explaining that a rule that "requir[es] that a jury rather than a judge find the essential facts bearing on punishment" and other "[r]ules that allocate decisionmaking authority in this fashion are prototypical procedural rules"). By altering the range of possible outcomes for a juvenile sentenced to life without parole under a mandatory sentencing scheme, *Miller* arguably heralds a substantive rule. *See id.* at 352–53, 124 S. Ct. at 2522–23; *see also Miller*, 132 S. Ct. at 2477 (Roberts, C.J., dissenting, joined by Scalia, Thomas, and Alito, J.J.) (summarizing the majority's decision as "invok[ing] [the Eighth] Amendment *to ban a punishment*" (emphasis supplied). For example, and as the Supreme Court wrote in *Miller* itself, in the post-*Miller* world, "appropriate occasions for sentencing juveniles to this harshest possible penalty [of life without parole] will be uncommon." *See Miller*, 132 S. Ct. at 2469. It seems to me that to write off as merely procedural a new rule that

32

will compel a different substantive result—that is, a different, and *lesser*, sentence—in the majority of cases that will follow would be to stretch the meaning of "procedural" too far. *See id.* The fact remains that, for a majority of juvenile offenders like Morgan, who have been convicted of crimes that would have previously required that they be incarcerated for the duration of their natural lives, *Miller* commands a wholly different outcome: whereas before we would lock them up and throw away the key, now such an outcome will be, in the Supreme Court's own words, "uncommon." *See id.* In my view, we should think long and hard before we dismiss that as a simple matter of "procedure."

I do not mean to suggest that any rule that is outcome determinative is also *a fortiori* a substantive rule retroactively applicable to cases on collateral review. As the Supreme Court has made clear, because rules of procedure "merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise," they have a "speculative connection to innocence" that does not justify retroactive applicability. *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523; *see Bousley v. United States*, 523 U.S. 614, 620, 118 S. Ct. 1604, 1610 (1998) ("The *Teague* doctrine is founded on the notion that one of the 'principal functions of habeas corpus [is] to assure that no man has been incarcerated under a procedure which creates an impermissibly large risk that the innocent will be convicted.'" (quoting *Teague*, 489 U.S. at 312, 109 S. Ct. at 1076)). And though

33

the *Teague* doctrine's original moorings can be found in cases involving guilt or innocence, we have since extended it to cases involving the state's power to punish. *See, e.g.*, *Moss*, 703 F.3d at 1303. "Consequently, unless a new rule of criminal procedure is of such a nature that without [it] the likelihood of an accurate conviction [or a constitutional sentence] is seriously diminished, there is no reason to apply the rule retroactively on habeas review." *Bousley*, 523 U.S. at 620, 118 S. Ct. at 1610 (citation and internal quotation marks omitted). But that is exactly my point. Following *Miller*, the cases in which a juvenile offender can appropriately be sentenced to life without parole will be "uncommon." *See Miller*, 132 S. Ct. at 2469. There is nothing "speculative" about the fact that these individuals, judged by today's standards, would likely receive a lesser sentence. *Schriro*, 542 U.S. at 352, 124 S. Ct. at 2523. Indeed, because the Supreme Court has told us that life-without-parole sentences will rarely be imposed on juveniles in the wake of *Miller*, a sentencing scheme that mandated that 100% of those individuals receive life without parole is, to put it mildly, the type of rule that renders "the likelihood of an accurate [sentence] . . . seriously diminished." *Bousley*, 523 U.S. at 620, 118 S. Ct. at 1610. That is because, were these individuals sentenced today, the likelihood of them receiving the same sentence would be minimal. In that way, *Miller* arguably announces a substantive rule retroactive to cases on collateral review or, at the very

34

least, a substantive or procedural rule of a different stripe from those we have previously confronted.

In the original panel order rejecting Morgan's application, the majority relied on the Supreme Court's statement in *Schriro* that "rules that regulate only the *manner of determining* the defendant's culpability are procedural." *Schriro*, 542 U.S. at 353, 124 S. Ct. at 2523 (emphasis in original). That statement proves too much, though, because the rule announced in *Miller* does not regulate "*only* the manner of determining the defendant's culpability." *Id.* (emphasis supplied). *Miller* arguably does more than merely alter the manner of determining an individual's sentence: in addition to changing the procedure for sentencing juvenile offenders to life without parole from a statutory mandate to an individualized determination made only after considering the nature of the offender and the criminal act, *Miller* simultaneously alters the *standard* by which the sentence is judged. *See Miller*, 132 S. Ct. at 2475. Prior to *Miller*, a juvenile offender being sentenced for certain crimes would automatically receive life without parole without regard to the "offender's youth and attendant characteristics." *Id.* at 2471. Now, however, those circumstances must be weighed in the balance, and "appropriate occasions for sentencing juveniles to [life without parole] will be uncommon." *See id.* at 2469. By making what was once a mandatory outcome an uncommon outcome, the rule does not alter *only* the manner of making the

35

determination, but also the substance—indeed, the merits—of imposing the sentence.  Though we may ultimately determine that this unusual species of constitutional rule is more akin to a procedural rule than to a substantive rule, we should at least do so only after deliberate consideration and discourse, because regardless of the taxonomic classification to which we ultimately assign it, *Miller*'s rule—and its application to cases on collateral review—is an important one.

I reiterate that the merits are not even at issue here—the only question we face is whether Morgan's application presents a question of exceptional importance worthy of review by the full Court sitting en banc.  *See* Fed. R. App. P. 35(a)(2).  A majority of this Court today decides that the issue presented by Morgan's application—whether juveniles previously sentenced to life in prison without the possibility of parole can avail themselves of the Great Writ to challenge sentences we all agree would be constitutionally flawed if they were handed down today—is not important enough to warrant further discussion.  *See Miller*, 132 S. Ct. 2455, 2469 (holding that "the Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders").  I cannot comprehend why.  There is great confusion amongst the courts of this country as to whether *Miller* applies retroactively.[2]  One Florida

---

[2] *Compare In re Landry*, No. 13-247 (4th Cir. May 30, 2013) (granting motion to file second or successive habeas petition brought solely on the ground that *Miller* announces a new rule retroactively applicable to cases on collateral review), *In re James*, No. 12-287 (4th Cir.

court recently certified the question of *Miller*'s retroactivity to the Florida Supreme

Court as "one of great public importance." *Falcon v. State*, — So. 3d —, No.

1D13–0034, 2013 WL 1809742, at *1 (Fla. Dist. Ct. App. Apr. 30, 2013) (per

curiam).[3] And although Judge Pryor suggests that "the only other [federal] circuit

---

May 10, 2013) (same), *Hill v. Snyder*, No. 10-14568, 2013 WL 364198, at *2 n.2 (E.D. Mich. Jan. 30, 2013) ("[T]his court would find *Miller* retroactive on collateral review, because it is a new substantive rule, which generally apply retroactively." (internal quotation marks omitted)), *People v. Cooks*, No. 1-11-2991, 2013 WL 1195435, at *4 (Ill. App. Ct. Mar. 22, 2013) (holding that *Miller* is retroactive), *People v. Williams*, 982 N.E.2d 181, 196 (Ill. App. Ct. 2012) (holding that *Miller* applies retroactively), *People v. Morfin,* 981 N.E.2d 1010, 1022 (Ill. App. Ct. 2012) ("[W]e find that *Miller* constitutes a new substantive rule."), *State v. Lockhart*, 820 N.W.2d 769 (Iowa Ct. App. 2012) (unpublished table decision) (vacating life-without-parole sentence imposed for a murder that occurred 29 years ago in light of *Miller*), *State v. Simmons*, 99 So. 3d 28 (La. 2012) (per curiam) (remanding for resentencing on collateral review in light of *Miller*), *State v. Williams,* 108 So. 3d 255 (La. Ct. App. 2013) (explaining that "*Miller* is retroactive to cases that were final in Louisiana at the time the decision in *Miller* was rendered"), *Commonwealth v. Cunningham*, 51 A.3d 178 (Pa. 2012) (per curiam) (granting appeal on the question of *Miller*'s retroactive applicability under Pennsylvania law), *and Ex parte Maxwell*, No. AP-76964, 2013 WL 458168 (Tex. Crim. App. Feb. 6, 2013) (per curiam) (granting appeal on the question of *Miller*'s retroactivity), *with Craig v. Cain*, No. 12-30035, 2013 WL 69128, at *2 (5th Cir. Jan. 4, 2013) (per curiam) (not retroactive), *People v. Carp*, 828 N.W.2d 685, 711 (Mich. Ct. App. 2012) (holding that *Miller*'s rule is procedural and therefore not retroactively applicable to cases on collateral review), *and Geter v. State,* No. 3D12–1736, 2012 WL 4448860, at *1 (Fla. Dist. Ct. App. Sept. 27, 2012) (same).

[3] Judge Pryor submits that I "confuse[] the rules of retroactivity that apply on federal collateral review with the rules of retroactivity that apply to state collateral review" because many of the cases cited in the footnote above "were decisions by state courts on state collateral review." Concurring Op. of Pryor, J., at 16. Again, that simply isn't the case. It is true that state courts can choose the principles that govern retroactivity in their own state collateral proceedings, *see Danforth v. Minnesota*, 552 U.S. 264, 280–81, 128 S. Ct. 1029, 1041–42 (2008), but many state courts have adopted *Teague*'s substantive/procedural dichotomy for assessing whether or not a new rule should be given retroactive effect. *See, e.g.*, *Danforth v. State*, 761 N.W.2d 493, 497–99 (Minn. 2009) (adopting *Teague*'s formulation on remand from the Supreme Court's decision in *Danforth v. Minnesota*, and explaining that many states have adopted *Teague* "primarily based on the important policy interest in finality," or because they "valued uniformity between state and federal rules"). It should come as no surprise, then, that several of the cases cited in the preceding footnote expressly employ the *Teague* mode of analysis in determining whether *Miller* should apply retroactively. *See, e.g.*, *Cooks*, 2013 WL 1195435, at *4 (applying *Teague* to find *Miller* retroactive); *Carp*, 828 N.W.2d at 708–09

court to have addressed the question and explained its analysis agrees" that *Miller* does not apply retroactively, Concurring Op. of Pryor, J., at 18 (citing *Craig*, 2013 WL 69128, at *2), that statement is misleading. Two separate panels of the Fourth Circuit recently granted motions to file a second or successive habeas petition brought solely on grounds of *Miller*'s retroactivity—grounds identical to those contained in Morgan's application here.[4] *See In re Landry*, No. 13-247 (4th Cir.

---

(finding that *Miller* is procedural under the *Teague* framework). Certainly Judge Pryor would not quarrel with the proposition that, in our dual system of coequal sovereigns, state courts are just as capable as federal courts of faithfully applying the rules set down by the Supreme Court to the cases that come before them. *See Tafflin v. Levitt*, 493 U.S. 455, 465–66, 110 S. Ct. 792, 798–99 (1990) (explaining the Court's "full faith in the ability of state courts to handle the complexities of" the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, a complex federal scheme, and noting that "[t]o hold otherwise would . . . denigrate the respect accorded coequal sovereigns"); *cf. Pompey v. Broward County*, 95 F.3d 1543, 1550 (11th Cir. 1996) ("The state courts are courts of equal dignity with all of the federal 'inferior courts'—to use the Framers' phrase—and state courts have the same duty to interpret and apply the United States Constitution as we do."). That being so, there is no reason why the analysis of a state court applying *Teague* shouldn't be just as persuasive as that of any other federal court whose decisions do not bind us.

[4] Judge Pryor contends that "the prisoner in *In re James* who sought permission to file a second or successive motion asserted . . . claims based on both 'newly discovered evidence'" *and* the argument that *Miller* applies retroactively, but that assertion is specious. Concurring Op. of Pryor, J., at 19. It is true that the petitioner in *James*—when he was still acting pro se and filling out the pre-printed form provided by the court to pro se applicants—handwrote "ALL OF THE ABOVE" in the space calling for the applicant to state which prong (new evidence or a new rule retroactively applicable to cases on collateral review) of § 2255(h) formed the basis for his motion. *In re James*, No. 12-287, D.E. 2-1, at 3. But James was then appointed counsel, who filed a brief arguing *only* that *Miller* set forth a new rule of constitutional law retroactive to cases on collateral review. *See In re James*, No. 12-287, D.E. 18. Because James's pro se application was utter nonsense and his counseled brief argued only that *Miller* applies retroactively, the *only* way the Fourth Circuit could grant the application in *In re James* was if it first held that the applicant had "ma[de] a prima facie showing" that *Miller* applies retroactively. 28 U.S.C. § 2244(b)(3)(C).

Judge Pryor also submits that it is impossible to know whether the Fourth Circuit "determined that the prisoner had made a prima facie showing that the rule in *Miller* was

May 30, 2013); *In re James*, No. 12-287 (4th Cir. May 10, 2013). Given that a "court of appeals may authorize the filing of a second or successive application *only* if it determines that the application makes a prima facie showing" of retroactivity or of evidence showing the applicant's innocence, 28 U.S.C. § 2244(b)(3)(C) (emphasis supplied), Judge Pryor is wrong to state that "[t]hese two orders and the dictum in the footnote of a single opinion of a federal district court . . . hardly support" the proposition that there is confusion among the federal courts as to the merit of Morgan's application, Concurring Op. of Pryor, J., at 20. The *holdings* of these two separate orders from the Fourth Circuit permit the applicants in those cases to file second or successive petitions. *See In re Landry*, No. 13-247 (4th Cir. May 30, 2013); *In re James*, No. 12-287 (4th Cir. May 10, 2013). Those holdings are permitted under federal law only if the court of appeals first concludes that the applicant has made a prima facie showing that he satisfies the requirements of § 2255(h). The only issue before us is whether Morgan has

retroactive on collateral review because it was substantive, because it was a watershed rule of criminal procedure, or for some other reason" when it granted the applicant's motion to file a second or successive petition in *In re Landry*. Concurring Op. of Pryor, J., at 19–20. But it simply does not matter. After all, to grant the applications in *In re Landry* and *In re James*, federal law *required* the Fourth Circuit to hold that the applicants had made a prima facie showing that *Miller* applies retroactively to cases on collateral review. *See* § 2244(b)(3)(C) ("The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the application satisfies the requirements of this subsection."). Because we would have to grant Morgan's application if we found him to have made a prima facie showing on either prong, Judge Pryor's point rings hollow—it is a distinction without a difference, because under either mode of analysis, we would have to grant Morgan's application here. *See Farris v. United States*, 333 F.3d 1211, 1216 (11th Cir. 2003) (per curiam) (explaining that authorization to file a second or successive motion is jurisdictional).

made such a prima facie showing.  So, if we are counting cases in the courts of appeals, as Judge Pryor seems to suggest we ought to be doing, there are actually more cases *supporting* Morgan's application than there are opposing it.  *Compare In re Landry*, No. 13-247 (4th Cir. May 30, 2013), *and In re James*, No. 12-287 (4th Cir. May 10, 2013), *with Craig*, 2013 WL 69128, at *2.

Moreover, because an application to file a second or successive habeas petition presents a jurisdictional question, above all else, "it is our responsibility to see that [the matter] is decided correctly under the law." *United States v. Smith*, 654 F.3d 1263, 1266 n.1 (11th Cir. 2011), *vacated on other grounds*, 684 F.3d 1364 (11th Cir. 2012).  Again, my point exactly: because we considered Morgan's application ex parte, we have yet to even hear from the government in this case.  In addition, the prima facie showing necessary for certification under § 2255(h) merely requires "a sufficient showing of possible merit to warrant a fuller exploration by the district court." *In re Davis*, 565 F.3d 810, 816 (11th Cir. 2009) (per curiam).  Once we make that "limited determination," "[t]he district court is to decide the [§ 2255(h)] issue[s] fresh, or in the legal vernacular, de novo." *Moss*, 703 F.3d at 1303 (internal quotation marks omitted).  Therefore, and although Morgan's position on the retroactivity of *Miller* may not ultimately prove to be the correct one, it needn't be for him to achieve § 2254(h) certification.

40

I end where I began—in my view, there can be little doubt that whether a juvenile offender can attack on collateral review his sentence of mandatory life imprisonment without the possibility of parole—a sentence that would now be constitutionally flawed pursuant to *Miller*—constitutes "a question of exceptional importance" deserving of en banc review.  Fed. R. App. P. 35(a)(2).  Indeed, to Morgan and hundreds of similarly situated juvenile offenders sentenced to life without parole who would likely receive a different sentence were they able to collaterally attack their sentences under § 2255, the issue presented here is one of immense proportions.

As a court, we therefore stand at a crossroads: we can either cling to the belief that the government is wrong and that we have nothing to learn from en banc review, or we can have the parties brief the matter to ensure that we reach the correct decision under the law.  The Court today chooses the former course.  To me, that the latter route is the better one is self-evident—after all, why should we not take a little extra effort to ensure that we get this one right, at least before we shut the courthouse door on those 336 juveniles currently serving unconstitutional sentences in prisons throughout our circuit?  The question is an important one, and we have nothing to lose by hearing from all the parties before we make a decision on such a weighty issue.  Of one thing we can be sure, Michael Morgan—and the hundreds of other inmates serving sentences of mandatory life without parole

41

meted out pursuant to now-unconstitutional sentencing schemes—isn't going anywhere anytime soon.