We decline to address Castaneda's argument under *Graham* as presented by his brief on appeal, because the possibility exists that upon remand, Castaneda might not be resentenced to life imprisonment.

Finally, the State argues that the district court committed plain error when it failed to order Castaneda's three sentences for use of a deadly weapon to run consecutively "to *all* other sentences imposed."[70] We agree and vacate all of Castaneda's other sentences and remand the cause for resentencing.[71]

## VI. CONCLUSION

Castaneda's assignments regarding trial error are without merit. But the life imprisonment sentences imposed upon Castaneda were effectively life imprisonment without the possibility of parole and unconstitutional under *Miller*.[72] We accordingly vacate those unconstitutional sentences and remand the cause for resentencing. We also vacate all of Castaneda's other sentences, because the district court committed plain error in ordering some of those sentences to run concurrently rather than consecutively.

Convictions affirmed, all sentences vacated, and cause remanded for resentencing.

---

[70] Brief for appellee at 75 (emphasis in original).

[71] See, Neb. Rev. Stat. § 28-1205(3) (Cum. Supp. 2012); *State v. Scott*, 284 Neb. 703, 824 N.W.2d 668 (2012); *State v. Russell*, 248 Neb. 723, 539 N.W.2d 8 (1995).

[72] *Miller, supra* note 34.

---

State of Nebraska, appellee, v.
Douglas M. Mantich, appellant.
___ N.W.2d ___

Filed February 7, 2014.    No. S-11-301.

1. **Constitutional Law: Sentences.** Whether a sentence violates the Eighth Amendment's cruel and unusual punishment clause presents a question of law.
2. **Judgments: Appeal and Error.** When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.

3. **Constitutional Law: Criminal Law: Statutes: Convictions: Sentences: Time.**
When a decision of the U.S. Supreme Court results in a "new rule," that rule
applies to all criminal cases still pending on direct review. As to convictions
that are already final, however, the rule applies only in limited circumstances.
New substantive rules generally apply retroactively. This includes decisions that
narrow the scope of a criminal statute by interpreting its terms, as well as con-
stitutional determinations that place particular conduct or persons covered by the
statute beyond the State's power to punish.

4. **Constitutional Law: Criminal Law: Time.** New rules of procedure generally
do not apply retroactively. The only exception is those rules that are "watershed
rules of criminal procedure" implicating the fundamental fairness and accuracy of
the criminal proceedings.

5. **Constitutional Law: Criminal Law: Minors: Sentences: Time: Appeal and
Error.** The holding of the U.S. Supreme Court in *Miller v. Alabama*, ___ U.S.
___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), that the Eighth Amendment
forbids a sentencing scheme which mandates life in prison without the possibility
of parole for juvenile offenders, is a new substantive rule of constitutional law
which applies retroactively to criminal cases on collateral review.

Appeal from the District Court for Douglas County: J.
Patrick Mullen, Judge. Sentence vacated, and cause remanded
for resentencing.

Adam J. Sipple, of Johnson & Mock, for appellant.

Jon Bruning, Attorney General, and J. Kirk Brown for
appellee.

Heavican, C.J., Wright, Connolly, Stephan, McCormack,
Miller-Lerman, and Cassel, JJ.

Stephan, J.

In 1994, Douglas M. Mantich was convicted of first degree
murder and use of a firearm to commit a felony. He was sen-
tenced to life imprisonment for the murder conviction and
5 to 20 years' imprisonment for the firearm conviction. The
murder was committed when Mantich was 16 years old. On
direct appeal, we affirmed his convictions and life imprison-
ment sentence and vacated and remanded his firearm sentence
for resentencing.[1]

---

[1] *State v. Mantich*, 249 Neb. 311, 543 N.W.2d 181 (1996).

In 2010, Mantich filed an amended postconviction motion alleging his life imprisonment sentence violated the Eighth Amendment's prohibition on cruel and unusual punishment because it was (1) categorically prohibited under the U.S. Supreme Court's holding in *Graham v. Florida*[2] and (2) grossly disproportionate to the offense for which he was convicted. Mantich also alleged that the attorney who represented him at his trial and on direct appeal was ineffective in not asserting these Eighth Amendment claims. The district court denied the postconviction motion without conducting an evidentiary hearing, and Mantich appealed from that order.

We heard oral arguments in the appeal on October 7, 2011. On July 11, 2012, we set the case for reargument and ordered supplemental briefing after the U.S. Supreme Court held in *Miller v. Alabama*[3] that the Eighth Amendment forbids a state sentencing scheme that mandates life in prison without the possibility of parole for a juvenile offender convicted of homicide. We now hold that Mantich's life imprisonment sentence is unconstitutional under *Miller*.

## I. FACTS

On December 5, 1993, a gathering was held to mourn the death of a "Lomas" gang member. Several members of the gang attended the party, including Mantich, Gary Brunzo, Daniel Eona, Juan Carrera, and Angel Huerta. At the gathering, Mantich consumed between 5 and 10 beers and smoked marijuana in a 2½-hour period.

Sometime after 1 a.m., Carrera decided that he wanted to steal a car and commit a driveby shooting of a member of a rival gang. While holding a gun, Eona responded that he also wanted to steal a car and talked about "jackin' somebody" and "putting a gun to their head." Brunzo and Eona then walked toward Dodge Street to steal a vehicle. They returned about 20 minutes later in a stolen red minivan, and Carrera and Huerta

---

[2] *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

[3] *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

got in. Over his girlfriend's objection and attempt to physically restrain him, Mantich also got into the van.

The van had no rear seats. Eona was in the driver's seat, and Brunzo was in the front passenger seat. Carrera sat behind the driver's seat; Huerta sat on the passenger side, close to the sliding side door; and Mantich sat behind Carrera and Huerta, toward the back of the van. After a short time, Mantich realized that a man, later identified as Henry Thompson, was in the van. Thompson was kneeling between the driver's seat and the front passenger seat with his hands over his head and his head facing the front of the van.

The gang members began chanting "Cuz" and "Blood." Mantich thought the purpose was to make Thompson believe they were affiliated with a different gang. Eona demanded Thompson's money, and Brunzo told Thompson they were going to shoot him. Mantich saw Brunzo and Eona poke Thompson in the head with their guns. Eventually, a shot was fired and Thompson was killed. Thompson's body was pulled out of the van and left on 13th Street.

The group then drove to Carrera's house so he could retrieve his gun. After this, they drove by a home and fired several shots at it from the vehicle. Later, they sank the van in the Missouri River and walked back to 13th Street. From there, Mantich and Huerta took all the guns and went to Huerta's house to hide them. Brunzo, Eona, and Carrera walked toward the area of Thompson's body.

After hiding the guns with Huerta, Mantich walked to Brian Dilly's house. While still intoxicated, Mantich told Dilly and Dilly's brothers about the events of the night. Mantich claimed he had pulled the trigger and killed Thompson. When the 6 o'clock news featured a story on the homicide, Mantich said, "'I told you so,'" and "'I told you I did it.'" About an hour after the newscast, Mantich told Dilly that Brunzo was actually the person who shot and killed Thompson. The police later learned about Mantich's conversations with Dilly, and arrest warrants were issued for Mantich, Brunzo, Eona, and Carrera. Mantich was arrested on January 4, 1994.

Mantich agreed to talk with Omaha police about what happened and initially claimed that Brunzo shot Thompson. The

police told Mantich that statements were being obtained from Brunzo, Eona, and Carrera and that Mantich's statement was inconsistent with the information the police had acquired. The police also told Mantich that Dilly said Mantich confessed to shooting Thompson. Mantich admitted telling Dilly he shot Thompson, but explained that it was a lie and that he was only trying to look like "a bad ass." Mantich claimed that he had not shot anyone and that Brunzo was the shooter.

The police then told Mantich they knew what happened and assured Mantich that his family and girlfriend "would not abandon him" if he told the truth. At this point, Mantich admitted that he had pulled the trigger. Mantich said, "'I'm sorry it happened. I wished it wouldn't have happened.'" Mantich further stated, "'They handed me the gun and said shoot him, so I did it.'" Mantich again confessed during a taped statement to shooting Thompson.

Mantich testified in his own behalf at trial. He acknowledged his statements to Dilly and the police that he had shot Thompson, but told the jury that he had not shot Thompson. On September 26, 1994, the jury returned a verdict of guilty on one charge of first degree murder and one charge of use of a firearm to commit a felony.

## 1. Sentencing and Direct Appeal

In October 1994, the district court sentenced Mantich to a term of life imprisonment on the first degree murder conviction and to 5 to 20 years' imprisonment on the conviction of use of a firearm to commit a felony. Mantich's life imprisonment sentence carries no possibility of release on parole unless the Board of Pardons commutes his sentence to a term of years.[4] The court ordered the sentences to run consecutively.

On direct appeal, Mantich assigned various errors, including that the evidence was insufficient to support his convictions. He did not assert an Eighth Amendment claim with respect to his life imprisonment sentence. We found no merit in any of his assignments of error, but concluded that there was plain

---

[4] See, Neb. Const. art. IV, § 13; Neb. Rev. Stat. § 83-1,126 (Reissue 2008); *Poindexter v. Houston*, 275 Neb. 863, 750 N.W.2d 688 (2008).

error resulting from a failure to give credit for time served on his sentence for use of a firearm to commit a felony. We therefore affirmed his convictions but vacated the firearm sentence and remanded the cause with directions to resentence Mantich, giving him credit for time served.[5]

### 2. Postconviction Proceedings

Mantich filed a pro se motion for postconviction relief on September 25, 2006. The court dismissed the first five grounds of the motion, reasoning they were the same grounds Mantich raised on direct appeal. The court did not dismiss Mantich's claim of ineffective assistance of counsel and appointed counsel to represent Mantich with respect to that claim. That attorney filed the operative amended motion for postconviction relief on August 31, 2010.

The amended motion asserted Mantich's sentence of life imprisonment without parole violated the Eighth Amendment because it was (1) categorically prohibited under *Graham v. Florida*[6] and (2) disproportionate to the offense for which he was convicted. In *Graham*,[7] the U.S. Supreme Court held that "the Eighth Amendment forbids a State from imposing a life without parole sentence on a juvenile nonhomicide offender." The amended motion also alleged the attorney who represented Mantich during trial and on direct appeal was ineffective for not objecting to the life imprisonment without parole sentence on Eighth Amendment grounds.

The State moved to dismiss Mantich's amended motion, asserting *Graham* did not apply because Mantich was convicted of a homicide offense. The State further contended that Mantich's counsel was not ineffective.

On March 17, 2011, the district court denied Mantich's amended motion without an evidentiary hearing. The court concluded that Mantich's life imprisonment sentence was not categorically barred under *Graham* or any decision of this court. Mantich filed this timely appeal. While it was pending,

---

[5] See *Mantich, supra* note 1.

[6] *Graham, supra* note 2.

[7] *Id.*, 560 U.S. at 75.

the U.S. Supreme Court decided *Miller v. Alabama*.[8] *Miller* held that a sentence of mandatory life imprisonment without parole for a juvenile violated the Eighth Amendment's prohibition on cruel and unusual punishment. We ordered reargument and supplemental briefing on the effect of *Miller* on Mantich's postconviction motion.

## II. ASSIGNMENTS OF ERROR

In the original appeal from the denial of postconviction relief, Mantich assigned, restated and summarized, that the district court erred in (1) failing to vacate his sentence pursuant to the holding of *Graham*, (2) failing to vacate his sentence as unconstitutionally disproportionate to the offense of felony murder, and (3) failing to hold an evidentiary hearing on the issues presented by his ineffective assistance of counsel and Eighth Amendment claims. After we ordered supplemental briefing in light of *Miller*, Mantich reasserted all of the assignments of error raised in his initial brief. He also assigned, restated and consolidated, that his life imprisonment sentence is a violation of the 8th and 14th Amendments based on the U.S. Supreme Court's decision in *Miller*.

## III. STANDARD OF REVIEW

[1,2] Whether a sentence violates the Eighth Amendment's cruel and unusual punishment clause presents a question of law.[9] When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling.[10]

## IV. ANALYSIS

### 1. *Miller v. Alabama* Applies to Mantich

In *Miller v. Alabama*,[11] the Court held that the "Eighth Amendment forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile offenders."

---

[8]  *Miller, supra* note 3.

[9]  See *State v. Hurbenca*, 266 Neb. 853, 669 N.W.2d 668 (2003).

[10]  *State v. Sims*, 277 Neb. 192, 761 N.W.2d 527 (2009); *State v. Davis*, 276 Neb. 755, 757 N.W.2d 367 (2008).

[11]  *Miller, supra* note 3, 132 S. Ct. at 2469.

The Court reached its conclusion by applying two lines of precedent. First, the Court recognized two previous juvenile cases, *Graham v. Florida*[12] and *Roper v. Simmons*.[13] *Graham* held that a juvenile could not be sentenced to life imprisonment without parole for a nonhomicide offense. *Roper* held that a juvenile could not be sentenced to death. Both thus announced categorical bans on sentencing practices as they apply to juveniles. The Court in *Miller* reasoned that *Graham* and *Roper* established that "children are constitutionally different from adults for purposes of sentencing."[14] Specifically, the Court in *Miller* noted that compared to adults, children lack maturity and have an underdeveloped sense of responsibility, are more vulnerable to outside influences and pressures, and have yet to fully develop their character. Because of these differences, the Court reasoned juveniles have "diminished culpability and greater prospects for reform."[15]

Second, the *Miller* Court recognized prior Court jurisprudence requiring individualized decisionmaking in capital punishment cases.[16] It then applied this jurisprudence to the imposition of life imprisonment on juveniles by reasoning that a life imprisonment without parole sentence for a juvenile is tantamount to a death sentence for an adult.[17] According to the Court, because the Eighth Amendment when applied to adults requires individualized sentencing prior to the imposition of a death sentence, the Eighth Amendment when applied to juveniles requires individualized sentencing prior to the imposition of a sentence of life imprisonment without parole.[18]

---

[12] *Graham, supra* note 2.

[13] *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005).

[14] *Miller, supra* note 3, 132 S. Ct. at 2464.

[15] *Id*.

[16] *Miller, supra* note 3. See, *Sumner v. Shuman*, 483 U.S. 66, 107 S. Ct. 2716, 97 L. Ed. 2d 56 (1987); *Eddings v. Oklahoma*, 455 U.S. 104, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982); *Lockett v. Ohio*, 438 U.S. 586, 98 S. Ct. 2954, 57 L. Ed. 2d 973 (1978); *Woodson v. North Carolina*, 428 U.S. 280, 96 S. Ct. 2978, 49 L. Ed. 2d 944 (1976).

[17] *Miller, supra* note 3.

[18] *Id*.

The threshold question presented to us in this appeal is whether the holding in *Miller* applies to Mantich so that his sentence must be vacated and this cause remanded for a new sentencing hearing. We held in *State v. Castaneda*[19] that life imprisonment sentences imposed on juveniles in Nebraska prior to *Miller* were mandatory sentences and were equivalent to life imprisonment without parole. But Mantich's life imprisonment sentence was imposed and his first degree murder conviction became final years before *Miller* was decided. He is entitled to be resentenced only if the rule announced in *Miller* applies retroactively to cases that became final prior to its pronouncement, i.e., cases on collateral review.

### (a) Retroactivity Test

In its 1989 decision in *Teague v. Lane*,[20] the U.S. Supreme Court set forth a test for determining when a new rule of constitutional law will be applied to cases on collateral review. Before announcing the test, however, the Court emphasized that "the question 'whether a decision [announcing a new rule should] be given prospective or retroactive effect should be faced at the time of [that] decision.'"[21] The Court explained that "[r]etroactivity is properly treated as a threshold question, for, once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated."[22]

According to *Teague*, "new rules should always be applied retroactively to cases on direct review, but . . . generally they should not be applied retroactively to criminal cases on collateral review."[23] The rationale for the distinction is that collateral review is not designed as a substitute for direct review and that

---

[19] *State v. Castaneda, ante* p. 289, ___ N.W.2d ___ (2014).

[20] *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).

[21] *Id.*, 489 U.S. at 300, quoting Paul J. Mishkin, *Foreword: The High Court, the Great Writ, and the Due Process of Time and Law*, 79 Harv. L. Rev. 56 (1965).

[22] *Teague, supra* note 20, 489 U.S. at 300.

[23] *Id.*, 489 U.S. at 303.

the government has a legitimate interest in having judgments become and remain final.[24]

*Teague* articulated two exceptions to the general rule of nonretroactivity for cases on collateral review. First, a new rule should be applied retroactively if it "places 'certain kinds of primary, private individual conduct beyond the power of the criminal law-making authority to proscribe.'"[25] Second, a new rule should be applied retroactively if it "requires the observance of 'those procedures that . . . are "implicit in the concept of ordered liberty."'"[26] The ultimate holding in *Teague* was this: "Unless they fall within an exception to the general rule, new constitutional rules of criminal procedure will not be applicable to those cases which have become final before the new rules are announced."[27]

[3] Since *Teague*, the Court has refined the retroactivity analysis. The most significant refinement occurred in *Schriro v. Summerlin*.[28] The issue in *Schriro* was whether the Court's decision in *Ring v. Arizona*[29] applied retroactively to a death penalty case on federal habeas review. In deciding this, the Court stated:

> When a decision of this Court results in a "new rule," that rule applies to all criminal cases still pending on direct review. . . . As to convictions that are already final, however, the rule applies only in limited circumstances. New *substantive* rules generally apply retroactively. This includes decisions that narrow the scope of a criminal

[24] See *Teague*, *supra* note 20.

[25] *Id*., 489 U.S. at 307, quoting *Mackey v. United States*, 401 U.S. 667, 91 S. Ct. 1160, 28 L. Ed. 2d 404 (1971) (Harlan, J., concurring in part, and in part dissenting).

[26] *Id*., quoting *Mackey, supra* note 25 (quoting *Palko v. Connecticut*, 302 U.S. 319, 58 S. Ct. 149, 82 L. Ed. 2d 288 (1937), *overruled on other grounds, Benton v. Maryland*, 395 U.S. 784, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969)).

[27] *Teague, supra* note 20, 489 U.S. at 310.

[28] *Schriro v. Summerlin*, 542 U.S. 348, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004).

[29] *Ring v. Arizona*, 536 U.S. 584, 122 S. Ct. 2428, 153 L. Ed. 2d 556 (2002).

statute by interpreting its terms, . . . as well as consti-
tutional determinations that place particular conduct or
persons covered by the statute beyond the State's power
to punish. . . . Such rules apply retroactively because
they "necessarily carry a significant risk that a defendant
stands convicted of 'an act that the law does not make
criminal'" or faces a punishment that the law cannot
impose upon him.[30]

The Court explained that although it had sometimes referred
to rules of this type as "falling under an exception to *Teague'*s
bar on retroactive application of procedural rules, . . . they are
more accurately characterized as substantive rules not subject
to the bar."[31]

[4] *Schriro* further explained that new "rules of procedure"
generally do not apply retroactively.[32] The only exception is
those rules that are "'"watershed rules of criminal procedure"
implicating the fundamental fairness and accuracy of the crimi-
nal proceeding.'"[33] This class of rules is extremely narrow.[34]

In 2008, the U.S. Supreme Court ruled that the *Teague/
Schriro* retroactivity analysis it applies in federal habeas
actions is not binding upon state courts when deciding issues
of retroactivity under state law.[35] In doing so, the Court noted
that a state court is "'free to choose the degree of retroactivity
or prospectivity which [it] believe[s] appropriate to the par-
ticular rule under consideration, so long as [it] give[s] federal
constitutional rights at least as broad a scope as the United
States Supreme Court requires.'"[36] In other words, states can

---

[30] *Schriro, supra* note 28, 542 U.S. at 351-52 (citations omitted).

[31] *Id.*, 542 U.S. at 352 n.4 (citations omitted).

[32] *Id.*, 542 U.S. at 352.

[33] *Id.*

[34] *Id.*

[35] *Danforth v. Minnesota*, 552 U.S. 264, 128 S. Ct. 1029, 169 L. Ed. 2d 859 (2008).

[36] *Id.*, 552 U.S. at 276, quoting *State v. Fair*, 263 Or. 383, 502 P.2d 1150 (1972).

give broader effect to new rules than is required by the *Teague/ Schriro* test.[37]

We have adhered to the *Teague/Schriro* test in the two cases in which we have addressed the retroactivity of a new rule announced by the U.S. Supreme Court to cases on state postconviction review,[38] and we see no reason to depart from that analysis.

### (b) Court Precedent

It is very clear that *Miller* announced a new rule. This is so because the rule announced in *Miller* was not dictated by precedent existing at the time Mantich's first degree murder conviction became final.[39] The new rule can apply to Mantich, who is before this court on collateral review, if it is either a substantive rule or a watershed rule of criminal procedure.[40]

According to *Schriro*, the key distinction in the retroactivity analysis is whether the new rule is substantive or procedural.[41] *Schriro* held that substantive rules *include* those that (1) narrow the scope of a criminal statute by interpreting its terms or (2) place particular conduct or persons covered by the statute beyond the State's power to punish. The second category encompasses "rules prohibiting a certain category of punishment for a class of defendants because of their status or offense."[42] Substantive rules apply retroactively because they carry a "'significant risk'" that a defendant stands convicted

---

[37] *Danforth, supra* note 35.

[38] *State v. Lotter*, 266 Neb. 245, 664 N.W.2d 892 (2003); *State v. Reeves*, 234 Neb. 711, 453 N.W.2d 359 (1990), *cert. granted and judgment vacated* 498 U.S. 964, 111 S. Ct. 425, 112 L. Ed. 2d 409 (1990).

[39] See *Whorton v. Bockting*, 549 U.S. 406, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007).

[40] *Id.*; *Schriro, supra* note 28.

[41] *Schriro, supra* note 28.

[42] *Penry v. Lynaugh*, 492 U.S. 302, 330, 109 S. Ct. 2934, 106 L. Ed. 2d 256 (1989), *abrogated on other grounds, Atkins v. Virginia*, 536 U.S. 304, 122 S. Ct. 2242, 153 L. Ed. 2d 335 (2002).

of "'"an act that the law does not make criminal"'" or "faces a punishment that the law cannot impose upon him."[43]

It is clear that categorical bans on sentences are substantive rules.[44] Rules forbidding imposition of the death sentence on persons with mental retardation[45] or on juveniles[46] and a rule forbidding life imprisonment for a juvenile convicted of a nonhomicide offense[47] have been considered substantive rules.[48]

In comparison, rules that "regulate only the *manner of determining* the defendant's culpability are procedural."[49] They do not produce a class of persons convicted of conduct the law does not make criminal, but merely raise the possibility that someone convicted with use of the invalidated procedure might have been acquitted otherwise.[50]

In the sentencing context, the Court has found a number of rules to be procedural. In *Schriro v. Summerlin*,[51] the Court addressed whether the rule announced in *Ring v. Arizona*[52] applied retroactively to cases on collateral review. *Ring* held that a jury, and not a judge, had to find an aggravating circumstance necessary for imposition of the death penalty. *Schriro* held this rule was procedural, noting it merely "altered the range of permissible methods for determining whether a

---

[43] *Schriro, supra* note 28, 542 U.S. at 352, quoting *Bousley v. United States*, 523 U.S. 614, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).

[44] See *Penry, supra* note 42.

[45] *Atkins*, *supra* note 42.

[46] *Roper, supra* note 13.

[47] *Graham*, *supra* note 2.

[48] See, e.g., *Allen v. Buss*, 558 F.3d 657 (7th Cir. 2009) (*Atkins*); *Nixon v. State*, 2 So. 3d 137 (Fla. 2009) (*Atkins*); *McStoots v. Com.*, 245 S.W.3d 790 (Ky. App. 2007) (*Roper*); *Duncan v. State*, 925 So. 2d 245 (Ala. Crim. App. 2005) (*Roper*); *People v. Rainer*, No. 10CA2414, 2013 WL 1490107 (Colo. App. Apr. 11, 2013) (*Graham*); *Bonilla v. State*, 791 N.W.2d 697 (Iowa 2010) (*Graham*).

[49] *Schriro*, *supra* note 28, 542 U.S. at 353.

[50] *Schriro*, *supra* note 28.

[51] *Id*.

[52] *Ring*, *supra* note 29.

defendant's conduct is punishable by death."[53] It noted that rules that "allocate decisionmaking authority in this fashion are prototypical procedural rules."[54] Notably, however, the Court stated:

> This Court's holding that, *because* [a state] has made a certain fact essential to the death penalty, that fact must be found by a jury, is not the same as *this Court's* making a certain fact essential to the death penalty. The former was a procedural holding; the latter would be substantive.[55]

In *Lambrix v. Singletary*,[56] the Court addressed whether the rule announced in *Espinosa v. Florida*[57] applied retroactively to cases on collateral review. *Espinosa* held that if a sentencing judge in a state that requires specified aggravating circumstances to be weighed against any mitigating circumstances at the sentencing phase of a capital trial is required to give deference to a jury's advisory sentencing recommendation, then neither the jury nor the judge is constitutionally permitted to weigh invalid aggravating circumstances. Without extensive analysis, the *Lambrix* Court concluded this rule did not prohibit the imposition of capital punishment on a particular class of persons.

In *Sawyer v. Smith*,[58] the Court addressed whether the rule announced in *Caldwell v. Mississippi*[59] applied retroactively to cases on collateral review. *Caldwell* held that the Eighth Amendment prohibits imposition of the death penalty by a sentencer that has been led to the false belief that the responsibility for determining the appropriateness of the sentence rests

---

[53] *Schriro, supra* note 28, 542 U.S. at 353.

[54] *Id*.

[55] *Id*., 542 U.S. at 354.

[56] *Lambrix v. Singletary*, 520 U.S. 518, 117 S. Ct. 1517, 137 L. Ed. 2d 771 (1997).

[57] *Espinosa v. Florida*, 505 U.S. 1079, 112 S. Ct. 2926, 120 L. Ed. 2d 854 (1992).

[58] *Sawyer v. Smith*, 497 U.S. 227, 110 S. Ct. 2822, 111 L. Ed. 2d 193 (1990).

[59] *Caldwell v. Mississippi*, 472 U.S. 320, 105 S. Ct. 2633, 86 L. Ed. 2d 231 (1985).

elsewhere. The *Sawyer* Court concluded the rule was not retroactive, because it was simply a procedural rule "designed as an enhancement of the accuracy of capital sentencing."[60]

### (c) *Miller* and Other Jurisdictions

A number of jurisdictions have considered whether *Miller* announced a rule that is to be applied retroactively. The results are varied. The primary point of dissension is whether the rule announced in *Miller* is substantive.

The Louisiana Supreme Court held in *State v. Tate*[61] that the rule announced in *Miller* was a procedural one, largely because the Court in *Miller* specifically stated that "'[o]ur decision does not categorically bar a penalty for a class of offenders or type of crime.'" Louisiana reasoned that *Miller* simply "altered the range of **permissible methods**" for determining whether a juvenile could be sentenced to life imprisonment without parole.[62] In *Com. v. Cunningham*[63] the Pennsylvania Supreme Court adopted similar reasoning, holding that "by its own terms, the *Miller* holding 'does not categorically bar a penalty for a class of offenders.'" A U.S. district court in Virginia has also adopted this rationale.[64]

The Minnesota Supreme Court held in *Chambers v. State*[65] that the rule announced in *Miller* was procedural and not substantive because it did not "eliminate the power of the State to impose the punishment of life imprisonment without the possibility of release upon a juvenile offender who has committed a homicide offense." Instead, it reasoned that *Miller* simply requires "'that a sentencer follow *a certain process*—considering an offender's youth and attendant

---

[60] *Sawyer, supra* note 58, 497 U.S. at 244.

[61] *State v. Tate*, No. 2012-OK-2763, 2013 WL 5912118 at *6 (La. Nov. 5, 2013), quoting *Miller, supra* note 3.

[62] *Id*.

[63] *Com. v. Cunningham*, 81 A.3d 1, 10 (Pa. 2013), quoting *Miller, supra* note 3.

[64] *Johnson v. Ponton*, No. 3:13-CV-404, 2013 WL 5663068 (E.D. Va. Oct. 16, 2013) (memorandum opinion).

[65] *Chambers v. State*, 831 N.W.2d 311, 328 (Minn. 2013).

characteristics—before imposing'" a sentence of life impris-
onment without parole.[66] The U.S. Court of Appeals for the
11th and 5th Circuits and the Michigan Court of Appeals have
all adopted similar reasoning.[67] The 11th Circuit placed partic-
ular reliance on *Penry v. Lynaugh*.[68] In *Penry*, the Court held
that a new rule "prohibiting a certain category of punishment
for a class of defendants because of their status or offense"
is retroactive, but only where a class cannot be subjected to
the punishment "regardless of the procedures followed."[69] The
11th Circuit reasoned that *Miller* is not substantive, because
it merely altered the range of permissible methods for deter-
mining whether a juvenile's conduct is punishable by life
imprisonment without parole and did not completely forbid
a jurisdiction from imposing a sentence of life imprisonment
without parole.[70]

But at least four jurisdictions have reasoned that the rule
announced in *Miller* is a substantive one, largely because it
fits into the second category of substantive rules announced
in *Schriro*. The Illinois Court of Appeals held in *People v.
Morfin*[71] that *Miller* was a substantive rule because it "man-
dates a sentencing range broader than that provided by statute
for minors convicted of first degree murder." A concurring
opinion emphasized that the rule was substantive because
*Miller* forbids an entire category of sentence—a mandatory
sentence of life imprisonment for juveniles.[72] The concur-
rence also reasoned that a new rule that did not prohibit a
certain sentence in every case but prohibited the mandatory

---

[66] *Id*., quoting *Miller, supra* note 3.

[67] See *In re Morgan*, 717 F.3d 1186 (11th Cir. 2013) (en banc); *Craig v.
Cain*, No. 12-30035, 2013 WL 69128 (5th Cir. Jan. 4, 2013) (unpublished
opinion); and *People v. Carp*, 298 Mich. App. 472, 828 N.W.2d 685
(2012).

[68] *Penry, supra* note 42.

[69] *Id*., 492 U.S. at 330.

[70] *In re Morgan, supra* note 67.

[71] *People v. Morfin*, 2012 IL App (1st) 103568, ¶ 56, 981 N.E.2d 1010, 1022,
367 Ill. Dec. 282, 294 (2012).

[72] *Morfin, supra* note 71 (Sterba, J., specially concurring).

imposition of that sentence was a substantive rule and not a procedural one.[73] Similarly, in *Jones v. Mississippi*,[74] the Supreme Court of Mississippi reasoned that *Miller* was a substantive rule because it "explicitly foreclosed imposition of a *mandatory* sentence of life without parole on juvenile offenders." It further reasoned that *Miller* required a substantive change in Mississippi law, because it required legislative modification of the existing law that had no provision for following the dictates of *Miller*. Very recently, the Supreme Judicial Court of Massachusetts held the *Miller* rule was substantive because it "forecloses the imposition of a certain category of punishment—mandatory life in prison without the possibility of parole—on a specific class of defendants."[75] And the Supreme Court of Iowa in *State v. Ragland*[76] recently held:

> From a broad perspective, *Miller* does mandate a new procedure. Yet, the procedural rule for [an individualized sentencing] hearing is the result of a substantive change in the law that prohibits mandatory life-without-parole sentencing. Thus, the case bars states from imposing a certain type of punishment on certain people. . . . "Such rules apply retroactively because they 'necessarily carry a significant risk that a defendant' . . . faces a punishment that the law cannot impose upon him."

The Iowa Supreme Court also emphasized an article written by constitutional scholar Erwin Chemerinsky in which he stated:

> "There is a strong argument that *Miller* should apply retroactively: It says that it is beyond the authority of the criminal law to impose a mandatory sentence of life without parole. It would be terribly unfair to have individuals imprisoned for life without any chance of parole based on the accident of the timing of the trial.

---

[73] *Id.*

[74] *Jones v. Mississippi*, 122 So. 3d 698, 702 (Miss. 2013).

[75] *Diatchenko v. District Attorney for Suffolk Dist.*, 466 Mass. 655, 666, ___ N.E.2d ___, ___ (2013).

[76] *State v. Ragland*, 836 N.W.2d 107, 115-16 (Iowa 2013), quoting *Schriro, supra* note 28.

". . . .

". . . [T]he *Miller* Court did more than change procedures; it held that the government cannot constitutionally impose a punishment. As a substantive change in the law which puts matters outside the scope of the government's power, the holding should apply retroactively."[77]

Courts have also reached differing conclusions as to how the procedural posture of *Miller* affects the retroactivity analysis. *Miller* involved two defendants who were before the Court in separate but consolidated cases. Defendant Evan Miller was before the Court after his direct appeal from his criminal conviction was denied.[78] But the other defendant, Kuntrell Jackson, was before the Court on collateral review; he sought relief after a state court dismissed his application for a writ of state habeas corpus.[79] In announcing the new rule in *Miller*, the Court made no distinction between the procedural postures of the two defendants. Instead, it simply reversed both of the lower court judgments and remanded the causes "for further proceedings not inconsistent with this opinion."[80]

At least three jurisdictions have reasoned that the Court's equal treatment of the two defendants is a factor that must be considered in the retroactivity analysis. In *Ragland*, the Iowa Supreme Court noted that Jackson's case was remanded so that Jackson could be given an individualized sentencing hearing and reasoned that "[t]here would have been no reason for the Court to direct such an outcome if it did not view the *Miller* rule as applying retroactively to cases on collateral review."[81] *Ragland* also noted that the dissent in *Miller*

---

[77] *Ragland, supra* note 76, 836 N.W.2d at 117, quoting Erwin Chemerinsky, *Chemerinsky: Juvenile Life-Without-Parole Case Means Courts Must Look at Mandatory Sentences*, A.B.A. J. Law News Now (posted Aug. 8, 2012), http://www.abajournal.com/news/article/chemerinsky_juvenile_life-without-parole_case_means_courts_must_look_at_sen/.

[78] See *Miller, supra* note 3.

[79] *Id*.

[80] *Miller, supra* note 3, 132 S. Ct. at 2475.

[81] *Ragland, supra* note 76, 836 N.W.2d at 116.

suggested the majority's decision would invalidate other cases across the nation and reasoned that the dissent would not have raised such a concern if the Court did not intend its holding to apply to cases on collateral review. In *People v. Williams*,[82] an Illinois appellate court found it "instructive" that the Court applied the *Miller* rule to Jackson when he was before the Court on collateral review. And another Illinois appellate court noted the "relief granted to Jackson in *Miller* tends to indicate that *Miller* should apply retroactively on collateral review."[83] Most recently, in *Diatchenko v. District Attorney for Suffolk Dist*.[84] the highest court in Massachusetts reasoned that because the Court applied the rule to Jackson, "evenhanded justice requires that it be applied retroactively to all who are similarly situated."

Other jurisdictions, however, conclude the Court's treatment of Jackson is not a relevant factor in the retroactivity analysis. In *Com. v. Cunningham*,[85] the Pennsylvania Supreme Court noted that it was not clear the retroactivity issue was before the Court with respect to Jackson and that in the absence of a "specific, principled retroactivity analysis" by the Court, it would not deem the Court to have held the *Miller* rule applied retroactively just because the Court applied it to Jackson. Similarly, in *People v. Carp*,[86] the Michigan Court of Appeals reasoned that the "mere fact that the Court remanded Jackson for resentencing does not constitute a ruling or determination on retroactivity." *Carp* further reasoned that the issue of retroactivity was not raised as to Jackson and that thus, the Court had no reason to address it.

A federal district court in Virginia has taken a slightly different approach. In *Johnson v. Ponton*,[87] the court reasoned

---

[82] *People v. Williams*, 2012 IL App (1st) 111145, ¶ 54, 982 N.E.2d 181, 197, 367 Ill. Dec. 503, 519 (2012).

[83] *Morfin, supra* note 71, ¶ 57, 981 N.E.2d at 1023, 367 Ill. Dec. at 295.

[84] *Diatchenko, supra* note 75, 466 Mass. at 667, ___ N.E.2d at ___.

[85] *Cunningham, supra* note 63, 81 A.3d at 9.

[86] *Carp, supra* note 67, 298 Mich. App. at 518, 828 N.W.2d at 712.

[87] *Johnson, supra* note 64.

that although the U.S. Supreme Court stated in *Teague v. Lane*[88] that the retroactivity analysis is a threshold question and a prerequisite for announcement of a new constitutional rule, it has forgone this analysis in at least one recent case. Specifically, in *Padilla v. Kentucky*,[89] a petitioner brought a collateral challenge to his conviction. In deciding *Padilla*, the Court announced a new constitutional rule and applied it to the defendant before it, but did not engage in a retroactivity analysis. Later, in *Chaidez v. U.S.*,[90] the Court expressly held that the rule it announced in *Padilla* did not apply retroactively to other cases on collateral review. Based on the Court's actions in *Padilla* and *Chaidez*, the court in *Johnson* reasoned that the Court's application of the *Miller* rule to Jackson was not dispositive of its intent to apply the *Miller* rule to all cases on collateral review.

### (d) Resolution

Under the *Teague*/*Schriro* retroactivity analysis, the distinction between substance and procedure is important. But how the rule announced in *Miller* should be categorized is difficult, because it does not neatly fall into the existing definitions of either a procedural rule or a substantive rule.

As other courts have noted, the *Miller* rule certainly contains a procedural component, because it specifically requires that a sentencer follow a certain process before imposing the sentence of life imprisonment on a juvenile.[91] And unlike the holdings in *Graham v. Florida*[92] and *Roper v. Simmons*,[93] the *Miller* rule does not categorically bar a specific punishment; a State may still constitutionally sentence a juvenile to life imprisonment without parole under *Miller*.

---

[88] *Teague, supra* note 20.

[89] *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

[90] *Chaidez v. U.S.*, ___ U.S. ___, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013).

[91] See, *In re Morgan, supra* note 67; *Tate, supra* note 61; *Chambers, supra* note 65; *Cunningham, supra* note 63.

[92] *Graham, supra* note 2.

[93] *Roper, supra* note 13.

But at the same time, the *Miller* rule includes a substantive component. *Miller* did not simply change what entity considered the same facts.[94] And *Miller* did not simply announce a rule that was designed to enhance accuracy in sentencing.[95] Instead, *Miller* held that a sentencer must consider specific, individualized factors before handing down a sentence of life imprisonment without parole for a juvenile. Effectively, then, *Miller* required a sentencer of a juvenile to consider new facts, i.e., mitigation evidence, before imposing a life imprisonment sentence with no possibility of parole. In our view, this approaches what the Court itself held in *Schriro* would amount to a new substantive rule: The Court made a certain fact (consideration of mitigating evidence) essential to imposition of a sentence of life imprisonment without parole.[96] In other words, it imposed a new requirement as to what a sentencer must consider in order to constitutionally impose life imprisonment without parole on a juvenile.

And *Miller* itself recognized that when mitigating evidence is considered, a sentence of life imprisonment without parole for a juvenile should be rare. This is consistent with the underlying logic of *Miller*, based on *Graham*, that "'[i]t is difficult even for expert psychologists to differentiate between the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'"[97] In essence, *Miller* "amounts to something close to a de facto substantive holding,"[98] because it sets forth the general rule that life imprisonment without parole should not be imposed upon a juvenile except in the rarest of cases where that juvenile cannot be distinguished from an adult based on diminished capacity or culpability.

---

[94] Compare *Ring, supra* note 29.

[95] Compare *Caldwell, supra* note 59.

[96] *Schriro, supra* note 28.

[97] *Graham, supra* note 2, 560 U.S. at 73, quoting *Roper, supra* note 13.

[98] *The Supreme Court, 2011 Term—Leading Cases*, 126 Harv. L. Rev. 276, 286 (2012).

The substantive aspect of the *Miller* rule is also evident when considered in light of the effect of *Miller* on existing Nebraska law. In response to *Miller*, the Nebraska Legislature amended the sentencing laws for juveniles convicted of first degree murder.[99] The amendments changed the possible penalty for a juvenile convicted of first degree murder from a mandatory sentence of life imprisonment to a "maximum sentence of not greater than life imprisonment and a minimum sentence of not less than forty years' imprisonment."[100] The Legislature also mandated that in determining the sentence for a juvenile convicted of first degree murder, the sentencing judge "shall consider mitigating factors which led to the commission of the offense."[101] A juvenile may submit any mitigating factors to the sentencer, including, but not limited to, age at the time of the offense, degree of impetuosity, family and community environment, ability to appreciate the risks and consequences of the conduct, intellectual capacity, and the results of a mental health evaluation.[102] We view these as substantive changes to Nebraska law and requirements that sentencers consider new facts prior to sentencing a juvenile convicted of first degree murder. Most specifically, the fact that *Miller* required Nebraska to change its substantive punishment for the crime of first degree murder when committed by a juvenile from a mandatory sentence of life imprisonment to a sentence of 40 years' to life imprisonment demonstrates the rule announced in *Miller* is a substantive change in the law.

Moreover, the entire rationale of *Miller* is that when a sentencing scheme fails to give a sentencer a choice between life imprisonment without parole and something lesser, the scheme is necessarily cruel and unusual. Here, it is undisputed that Mantich's sentencer was denied that choice, and it

---

[99] 2013 Neb. Laws, L.B. 44 (codified at Neb. Rev. Stat. § 28-105.02 (Supp. 2013)).

[100] § 28-105.02(1).

[101] § 28-105.02(2).

[102] *Id.*

is the absence of that choice that makes the *Miller* rule more substantive than procedural. Further, we agree that the *Miller* rule is entirely substantive when viewed as Massachusetts, Mississippi, and Illinois have—as a categorical ban on the imposition of a mandatory sentence of life imprisonment without parole for juveniles.[103]

We also find it noteworthy that the Court applied the rule announced in *Miller* to Jackson, who was before the Court on collateral review. Years ago, the Court stated that it would not announce or apply a new constitutional rule in a case before it on collateral review unless that rule would apply to all defendants on collateral review.[104] The Court specifically adopted this policy in order to ensure that justice is administered evenhandedly.[105] Although we recognize that the Court has strayed from this policy on one recent occasion,[106] we are not inclined to refuse to apply the rule announced in *Miller* to a defendant before us on collateral review when the Court has already applied the rule to a defendant before it on collateral review. Evenhanded administration of justice is carried out only if Mantich, like Jackson, is entitled to the benefit of the new rule announced in *Miller*.[107] As noted by the Supreme Court of Iowa, any other result would be "'terribly unfair.'"[108]

[5] Because the rule announced in *Miller* is more substantive than procedural and because the Court has already applied that rule to a case on collateral review, we conclude that the rule announced in *Miller* applies retroactively to Mantich. Mantich's life imprisonment sentence must be vacated, and the cause remanded for resentencing under § 28-105.02.

---

[103] See, *Diatchenko, supra* note 75; *Jones, supra* note 74; *Morfin, supra* note 71.

[104] *Penry, supra* note 42; *Teague, supra* note 20.

[105] *Id*.

[106] See *Padilla, supra* note 89.

[107] See *Diatchenko, supra* note 75.

[108] *Ragland, supra* note 76, 836 N.W.2d at 117, quoting Chemerinsky, *supra* note 77.

## 2. Other Claims

In Mantich's original appeal, he argued that his sentence of life imprisonment without parole was categorically invalid under *Graham v. Florida*.[109] *Graham* held that a juvenile convicted of a nonhomicide offense cannot be sentenced to life imprisonment without parole. Mantich invites us to extend this holding to a juvenile convicted of felony murder.

Because we find Mantich is entitled to be resentenced under the dictates of *Miller*, we do not reach this argument in this appeal. If Mantich, on remand, is resentenced to life imprisonment with no minimum term which permits parole eligibility, he may raise the *Graham* argument in an appeal from that sentence.

Likewise, in view of our disposition, we need not reach Mantich's claim that his counsel was ineffective in failing to assert an Eighth Amendment challenge at his original sentencing and on direct appeal.

## V. CONCLUSION

The rule announced in *Miller* applies retroactively to Mantich. We remand the cause with directions to grant post-conviction relief by vacating his life imprisonment sentence and resentencing him pursuant to § 28-105.02.[110]

Sentence vacated, and cause
remanded for resentencing.

---

[109] *Graham, supra* note 2.

[110] See *Castaneda, supra* note 19.

Cassel, J., dissenting.

I respectfully dissent. First, I believe the rule from *Miller v. Alabama*[1] is a procedural rule that should not be applied retroactively on collateral review. Second, I would find Mantich's other claimed errors to be without merit. Thus, I would affirm the decision of the district court.

---

[1] *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).

RETROACTIVITY OF
*MILLER V. ALABAMA*

As the majority observed, the rule announced in *Miller* does not fall conveniently into the existing definitions of either a procedural rule or a substantive rule. But I believe the better approach would be to join the majority of jurisdictions that have ruled on this issue and conclude that the rule announced in *Miller* is a procedural one.[2]

Unlike the rules announced in *Graham v. Florida*[3] and *Roper v. Simmons*,[4] *Miller* did not categorically bar a specific punishment. The *Miller* Court specifically noted that its decision "mandate[d] only that a sentencer follow a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty."[5] *Miller* simply does not fall into the narrow category of a substantive rule, because no juvenile sentenced to life imprisonment without parole in Nebraska "faces a punishment that the law cannot impose upon him."[6] Although the process by which a juvenile may be sentenced to life imprisonment without parole now changes based upon *Miller*, the ultimate sentence of life imprisonment without parole for a juvenile is still a legitimate sentence. The U.S. Supreme Court has never indicated that anything less than a full categorical ban on a sentence may be

---

[2] See, *In re Morgan*, 717 F.3d 1186 (11th Cir. 2013) (en banc); *Holland v. Hobbs*, No. 5:12CV00463-SWW-JJV, 2013 WL 6332731 (E.D. Ark. Dec. 5, 2013); *Johnson v. Ponton*, No. 3:13-CV-404, 2013 WL 5663068 (E.D. Va. Oct. 16, 2013) (memorandum opinion); *Geter v. State*, 115 So. 3d 375 (Fla. App. 2012); *State v. Tate*, No. 2012-OK-2763, 2013 WL 5912118 (La. Nov. 5, 2013); *People v. Carp*, 298 Mich. App. 472, 828 N.W.2d 685 (2012); *Chambers v. State*, 831 N.W.2d 311 (Minn. 2013); *Com. v. Cunningham*, 81 A.3d 1 (Pa. 2013); *Craig v. Cain*, No. 12-30035, 2013 WL 69128 (5th Cir. Jan. 4, 2013) (unpublished opinion).

[3] *Graham v. Florida*, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010).

[4] *Roper v. Simmons*, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005).

[5] *Miller, supra* note 1, 132 S. Ct. at 2471.

[6] *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 159 L. Ed. 2d 442 (2004).

a new substantive rule, and in my view, we should decline to do so in the first instance.

I am not persuaded that the U.S. Supreme Court established a precedent of retroactive application of the *Miller* rule simply by applying the rule to a defendant before it on collateral review. A new rule is not made retroactive to cases on collateral review unless the Court holds it to be retroactive.[7] And a state can waive the *Teague v. Lane*[8] retroactivity bar by not raising it.[9] The Court likely did not address the retroactivity issue in *Miller* because the State of Arkansas did not argue that any new rule announced would not apply to Jackson, who was before the Court on collateral review. I do not believe that we should interpret silence as an affirmative holding that the *Miller* rule is to apply retroactively to defendants on collateral review. Further, I find it persuasive that the Court has recently demonstrated in *Padilla v. Kentucky*[10] and *Chaidez v. U.S.*[11] that its announcement of a new constitutional rule in a case before it on collateral review is not a determination of whether that rule should apply to all cases on collateral review.

In my view, the rule announced in *Miller* is not a "'"watershed rule[] of criminal procedure" implicating the fundamental fairness and accuracy of the criminal proceeding.'"[12] To qualify as a watershed rule, a new rule must both be necessary to prevent an impermissibly large risk of an inaccurate conviction and alter our understanding of the bedrock procedural principles essential to the fairness of a proceeding.[13] The Court has repeatedly emphasized that the watershed exception is

---

[7] *Tyler v. Cain*, 533 U.S. 656, 121 S. Ct. 2478, 150 L. Ed. 2d 632 (2001).

[8] *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).

[9] *Schiro v. Farley*, 510 U.S. 222, 114 S. Ct. 783, 127 L. Ed. 2d 47 (1994).

[10] *Padilla v. Kentucky*, 559 U.S. 356, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).

[11] *Chaidez v. U.S.*, ___ U.S. ___, 133 S. Ct. 1103, 185 L. Ed. 2d 149 (2013).

[12] *Schriro, supra* note 6, 542 U.S. at 355.

[13] *Whorton v. Bockting*, 549 U.S. 406, 127 S. Ct. 1173, 167 L. Ed. 2d 1 (2007).

extremely narrow and, since *Teague*, has yet to find a new rule that fits within the exception.[14] The only case that has ever satisfied this high threshold is *Gideon v. Wainwright*,[15] in which the Court held that counsel must be appointed for any indigent defendant charged with a felony.

The rule announced in *Miller* relates only to the sentencing stage of a criminal proceeding and, thus, cannot be said to be necessary to prevent an impermissibly large risk of an inaccurate conviction. In addition, it is not a rule announcing a "previously unrecognized bedrock procedural element that is essential to the fairness of a proceeding."[16] While the rule announced in *Miller* was important, it did not effect a sweeping change comparable to *Gideon*. These reasons further support not applying the rule announced in *Miller* retroactively to Mantich on collateral review.

Our judicial process favors the finality of judgments. As noted by the majority, Mantich's life imprisonment sentence was imposed and became final long before the decision in *Miller* was announced. There is an important interest in the finality of judgments that must be respected. I agree with the assessment of another court that "applying *Miller* retroactively 'would undermine the perceived and actual finality of criminal judgments and would consume immense judicial resources without any corresponding benefit to the accuracy or reliability of the [underlying criminal case].'"[17]

At least to a certain degree, some of the minority of courts addressing whether the *Miller* decision was substantive or procedural have relied upon perceptions of fairness between those whose direct appeals were still pending and those whose cases had already been finally determined. This is a dangerous expansion of the power of judges, because it places no principled limit upon the scope of judicial power. While the distinction between procedural and substantive may be difficult

---

[14] *Id*. (citing cases).

[15] *Gideon v. Wainright*, 372 U.S. 335, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

[16] *Whorton, supra* note 13, 549 U.S. at 421.

[17] *Geter, supra* note 2, 115 So. 3d at 383-84.

to apply, it affords a principled basis for decision. If a judge allows his or her perceptions of fairness to intrude, the decision ceases to be an application of law and becomes an application of the judge's personal biases and preferences. In my view, the existing legal framework drives the answer to the question before this court and dictates that the change is procedural. As a judge, my role goes no further.

## OTHER CLAIMS

### Graham v. Florida Argument

In his original appeal, Mantich argued that his sentence of life imprisonment without parole was categorically invalid under *Graham v. Florida*.[18] *Graham* held that a juvenile convicted of a nonhomicide offense cannot be sentenced to life imprisonment without parole. Mantich asked us to extend this holding to a juvenile convicted of felony murder. I would find that Mantich's postconviction claim based on *Graham* is not procedurally barred.

A motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, no matter how those issues may be phrased or rephrased.[19] *Graham* was decided in 2010, long after this court affirmed Mantich's conviction and life imprisonment sentence for first degree murder. *Graham* was the first case in which the U.S. Supreme Court imposed a categorical bar on life imprisonment sentences for a specific class of offenders. Mantich could not have asserted his *Graham* claim at trial or on direct appeal, because the Eighth Amendment jurisprudence at that time did not support a categorical bar on life imprisonment sentences.[20] Therefore, it is not procedurally barred and its merits can be addressed.

The issue decided by the U.S. Supreme Court in *Graham* was "whether the Constitution permits a juvenile offender to be sentenced to life in prison without parole for a nonhomicide

---

[18] *Graham, supra* note 3.

[19] *State v. Boppre*, 280 Neb. 774, 790 N.W.2d 417 (2010).

[20] See *State v. El-Tabech*, 259 Neb. 509, 610 N.W.2d 737 (2000).

crime."[21] The defendant was sentenced to life imprisonment, which carried no possibility of release except through executive clemency.[22] The Court held, as a matter of first impression, that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole."[23] The Court specifically limited its holding to "only those juvenile offenders sentenced to life without parole solely for a nonhomicide offense."[24] The Court distinguished homicide cases, noting:

> There is a line "between homicide and other serious violent offenses against the individual." . . . Serious non-homicide crimes "may be devastating in their harm . . . but 'in terms of moral depravity and of the injury to the person and to the public,' . . . they cannot be compared to murder in their 'severity and irrevocability.'" . . . This is because "[l]ife is over for the victim of the murderer," but for the victim of even a very serious nonhomicide crime, "life . . . is not over and normally is not beyond repair." . . . Although an offense like robbery or rape is "a serious crime deserving serious punishment," . . . those crimes differ from homicide crimes in a moral sense.
>
> It follows that, when compared to an adult murderer, a juvenile offender who did not kill or intend to kill has a twice diminished moral culpability. The age of the offender and the nature of the crime each bear on the analysis.[25]

We have considered the scope of *Graham* in one prior case. *State v. Golka*[26] involved a postconviction appeal by an offender who had been sentenced to two consecutive terms of life imprisonment for two first degree murders committed when he was 17 years old. His postconviction motion alleged

[21] *Graham, supra* note 3, 560 U.S. at 52-53.

[22] *Graham, supra* note 3.

[23] *Id.*, 560 U.S. at 74.

[24] *Id.*, 560 U.S. at 63.

[25] *Id.*, 560 U.S. at 69 (citations omitted).

[26] *State v. Golka*, 281 Neb. 360, 796 N.W.2d 198 (2011).

that the sentences constituted cruel and unusual punishment
in violation of the 8th and 14th Amendments to the U.S.
Constitution and article I, § 9, of the Nebraska Constitution.
That claim was rejected by the district court, and *Graham*
was decided during the pendency of the appeal. In affirming
the denial of postconviction relief, we agreed with two other
state courts which had held that *Graham* does not preclude
life imprisonment sentences for juvenile offenders convicted
of murder.[27]

Mantich argues that his crime must be considered a "'non-
homicide'" offense under *Graham* because there was no find-
ing at trial or sentencing that he killed or intended to kill
Thompson.[28] He argues that he was at most a "minor par-
ticipant" in the murder.[29] He bases this argument primarily
upon *Enmund v. Florida*[30] and *Tison v. Arizona*,[31] both of
which were appeals from death sentences. In *Enmund*, the
U.S. Supreme Court held that the Eighth Amendment did not
permit imposing "the death penalty on [a person] who aids
and abets a felony in the course of which a murder is com-
mitted by others but who does not himself kill, attempt to kill,
or intend that a killing take place or that lethal force will be
employed."[32] In *Tison*, the Court held that "major participation
in the felony committed, combined with reckless indifference
to human life, is sufficient to satisfy the *Enmund* culpabil-
ity requirement" for imposition of the death penalty.[33] Both
*Enmund* and *Tison* addressed the issue of when a murderer's
conduct was sufficiently culpable to warrant imposition of the
maximum penalty of death. Although the Court in *Graham*

---

[27] *Id*. (citing *Jackson v. Norris*, 2011 Ark. 49, 378 S.W.3d 103 (2011),
*reversed, Miller, supra* note 1; *State v. Andrews*, 329 S.W.3d 369 (Mo.
2010)).

[28] Brief for appellant at 22.

[29] *Id*. at 21.

[30] *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140
(1982).

[31] *Tison v. Arizona*, 481 U.S. 137, 107 S. Ct. 1676, 95 L. Ed. 2d 127 (1987).

[32] *Enmund, supra* note 30, 458 U.S. at 797.

[33] *Tison, supra* note 31, 481 U.S. at 158.

cited *Enmund* in support of its reasoning with respect to relative culpability, I do not interpret that citation as permitting a homicide to be considered a "nonhomicide" offense for purposes of sentencing, as Mantich urges.

Admittedly, the reasoning in *Miller v. Alabama*[34] offers some support for Mantich's argument. As noted, in *Miller*, the Court reasoned that because individualized sentencing was required for adults in cases involving imposition of the death penalty, the greatest possible penalty imposed upon an adult, individualized sentencing was also required for juveniles in cases involving imposition of the penalty of life imprisonment without parole, the greatest possible penalty imposed upon a juvenile. Mantich argues that because the Court equated death for adults with life imprisonment for juveniles in one context, all of the Court's previous requirements for constitutional imposition of the death penalty on adults now apply to constitutional imposition of life imprisonment without parole on juveniles. Particularly, he contends that the *Enmund/Tison* rationale is now directly applicable to him and that he cannot be sentenced to the greatest possible punishment available because there has been no showing that he killed or intended to kill.

The record contains some evidence concerning intent to kill. During Mantich's sentencing hearing, the court addressed the question of who pulled the trigger and stated:

> You admitted on two separate occasions separated by a month that you in fact fired the shot which killed . . . Thompson.
>
> The admission you made directly after the incident and particularly coupled with the admission to law enforcement personnel a month later with thoughts, feelings, and corroboration which would go along with the murder of someone certainly strongly suggests that you in fact pulled the trigger. The murder of . . . Thompson at point-blank range by putting a gun against his head and firing it is brutal beyond description and cold. . . .

---

[34] *Miller, supra* note 1.

> You murdered a blameless person . . . Mantich. One who had every right and expectation to lead his life without being subjected to a mindless, violent death carried out by you.

And on direct appeal, with regard to the insufficient evidence claim, we wrote:

> The facts taken in the light most favorable to the State are such that a finder of fact could conclude beyond a reasonable doubt that Mantich committed murder while aiding and abetting in the kidnapping and robbery of Thompson and used a firearm to commit a felony. There is sufficient evidence to demonstrate that Mantich aided and abetted the kidnapping and robbery perpetrated against Thompson. When Eona and Brunzo left the party and returned with the stolen van, Mantich joined them over the strong objections and physical restraint of his girl friend. Mantich testified that he heard Eona and Brunzo tell Thompson they were going to kill him, and Mantich watched as Eona and Brunzo repeatedly jabbed Thompson in the head with the barrels of their guns. Mantich's statement to police was sufficient to establish that he was handed a gun, placed the gun against the back of Thompson's head, and pulled the trigger.
>
> Even if the jury was uncertain as to whether Mantich actually shot Thompson, the evidence supports the jury's finding that Mantich aided and abetted in the kidnapping and robbery of Thompson. It was undisputed that Thompson was killed by someone in the van while the group was kidnapping, robbing, and terrorizing him. The group forcibly restrained Thompson with the express intent of robbing and terrorizing him. The evidence shows that Mantich encouraged these activities and participated in the verbal terrorization of Thompson. This evidence is sufficient to convict Mantich of felony murder and use of a weapon to commit a felony.[35]

---

[35] *State v. Mantich*, 249 Neb. 311, 328-29, 543 N.W.2d 181, 193-94 (1996).

Even if the record did not demonstrate that Mantich either killed or intended to kill, I would not extend the Court's holding in *Graham* to a juvenile convicted of felony murder. At the time Mantich committed his crime, the sentence in Nebraska for first degree murder was either mandatory life imprisonment or death.[36] *Graham* held that the Eighth Amendment prohibited sentencing a juvenile to the maximum penalty of life imprisonment without parole for the nonhomicide offense which the juvenile committed. That is a far different issue than whether the Eighth Amendment prohibits imposing the minimum sentence of life imprisonment without parole on a juvenile who committed first degree murder. As the Court noted in *Graham*, nonhomicide crimes "differ from homicide crimes in a moral sense."[37] I would urge that we join the other jurisdictions which have held that *Graham* has no application to a juvenile convicted of a homicide offense under a felony murder theory.[38]

## Unconstitutionally Disproportionate Claim

Unlike Mantich's argument based on *Graham*, his claim that his life imprisonment sentence was unconstitutionally disproportionate to his crime could have been raised at the time of sentencing and on direct appeal. The constitutional principle of proportionality was well established at the time of Mantich's first degree murder conviction.[39] Because the issue was not raised at sentencing or on direct appeal, it is procedurally barred in this postconviction proceeding. However, I will address the merits of the issue in the context of Mantich's claim that his trial and appellate counsel was ineffective in failing to raise it.

---

[36] See Neb. Rev. Stat. §§ 28-105 (Reissue 1989) and 28-303 (Reissue 1995).

[37] *Graham, supra* note 3, 560 U.S. at 69.

[38] See, *Arrington v. State*, 113 So. 3d 20 (Fla. App. 2012); *Jackson, supra* note 27; *Bell v. State*, 2011 Ark. 379, 2011 WL 4396975 (2011) (unpublished opinion).

[39] See, *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983); *Weems v. United States*, 217 U.S. 349, 30 S. Ct. 544, 54 L. Ed. 793 (1910).

### Ineffectiveness of Trial and Appellate Counsel

When a defendant was represented both at trial and on direct appeal by the same lawyers, generally speaking, the defendant's first opportunity to assert an ineffective assistance of trial counsel claim is in a motion for postconviction relief.[40] That is the circumstance here. The record shows that Mantich was represented at trial and on direct appeal by the same attorney. He alleged in his postconviction motion that his counsel was ineffective in failing to argue at sentencing and on direct appeal that a life imprisonment sentence would constitute cruel and unusual punishment.

In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*,[41] to show that counsel's performance was deficient and that counsel's deficient performance prejudiced the defense.[42] In order to show prejudice, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.[43] The two prongs of this test, deficient performance and prejudice, may be addressed in either order.[44] The entire ineffectiveness analysis is viewed with the strong presumption that counsel's actions were reasonable.[45] Defense counsel is not ineffective for failing to raise an argument that has no merit.[46] Accordingly, I will examine the merit of Mantich's claim that his life imprisonment sentence is unconstitutionally disproportionate to his crime.

The Eighth Amendment "prohibits not only barbaric punishments, but also sentences that are disproportionate to the

---

[40] *State v. McHenry*, 268 Neb. 219, 682 N.W.2d 212 (2004).

[41] *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[42] *State v. McGhee*, 280 Neb. 558, 787 N.W.2d 700 (2010).

[43] *Id*.

[44] *Id*.

[45] *State v. Bazer*, 276 Neb. 7, 751 N.W.2d 619 (2008).

[46] *State v. Vo*, 279 Neb. 964, 783 N.W.2d 416 (2010).

crime committed."[47] The U.S. Supreme Court has characterized this as a "'narrow proportionality principle'"[48] which "'does not require strict proportionality between crime and sentence,'"[49] but, rather, "'forbids only extreme sentences that are "grossly disproportionate" to the crime.'"[50] The Court has identified objective criteria which should guide an Eighth Amendment proportionality analysis, including "(i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentences imposed for commission of the same crime in other jurisdictions."[51]

But "intrajurisdictional and interjurisdictional analyses are appropriate only in the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality."[52] Courts must give "'substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes,'" bearing in mind that the Eighth Amendment "does not mandate adoption of any one penological theory" and "marked divergences both in underlying theories of sentencing and in the length of prescribed prison terms are the inevitable, often beneficial, result of the federal structure."[53] The "culpability of the offender" is also a factor in the analysis.[54] In its most recent application of these

---

[47] *Solem, supra* note 39, 463 U.S. at 284.

[48] *Ewing v. California*, 538 U.S. 11, 20, 24, 123 S. Ct. 1179, 155 L. Ed. 2d 108 (2003), quoting *Harmelin v. Michigan*, 501 U.S. 957, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (Kennedy, J., concurring in part and concurring in judgment). See, also, *Solem, supra* note 39.

[49] *Ewing, supra* note 48, 538 U.S. at 23, quoting *Harmelin, supra* note 48 (Kennedy, J., concurring in part and concurring in judgment).

[50] *Id.*

[51] *Solem, supra* note 39, 463 U.S. at 292.

[52] *Harmelin, supra* note 48, 501 U.S. at 1005 (Kennedy, J., concurring in part and concurring in judgment). See, also, *Ewing, supra* note 48.

[53] *Harmelin, supra* note 48, 501 U.S. at 999 (Kennedy, J., concurring in part and concurring in judgment).

[54] *Solem, supra* note 39, 463 U.S. at 292.

principles to a sentence of imprisonment, the U.S. Supreme
Court in *Ewing v. California*[55] upheld a sentence of 25
years' to life imprisonment for grand theft under California's
"three strikes law," concluding that it was not "'the rare
case in which a threshold comparison of the crime commit-
ted and the sentence imposed leads to an inference of gross
disproportionality.'"[56]

The same conclusion is inescapable here. First degree mur-
der is the most serious criminal offense defined by Nebraska
law. "[I]n terms of moral depravity and of the injury to the
person and to the public," other serious crimes do "not com-
pare with murder."[57] Mantich received the minimum sentence
which can be given to one convicted of first degree murder.
Although he seeks to minimize his personal involvement in the
events which led to the death of Thompson, we noted on direct
appeal that "Mantich's statement to police was sufficient to
establish that he was handed a gun, placed the gun against the
back of Thompson's head, and pulled the trigger."[58] We further
noted that the group robbed, terrorized, and forcibly restrained
Thompson and that "Mantich encouraged these activities and
participated in the verbal terrorization."[59]

Mantich cites several state court decisions from other
jurisdictions in support of his Eighth Amendment argument.
But those cases are either distinguishable on the facts or oth-
erwise unpersuasive. Considering the gravity of the offense
and all of the relevant facts and circumstances, notwith-
standing Mantich's youth, there is no basis for a "threshold
inference"[60] that his sentence was grossly disproportionate
to his crime. Because Mantich's Eighth Amendment claim is

---

[55] *Ewing, supra* note 48.

[56] *Id.*, 538 U.S. at 30, quoting *Harmelin, supra* note 48 (Kennedy, J.,
concurring in part and concurring in judgment).

[57] *Coker v. Georgia*, 433 U.S. 584, 598, 97 S. Ct. 2861, 53 L. Ed. 2d 982
(1977). See, also, *Graham, supra* note 3.

[58] *Mantich, supra* note 35, 249 Neb. at 328, 543 N.W.2d at 194.

[59] *Id.* at 329, 543 N.W.2d at 194.

[60] See *Graham, supra* note 3, 560 U.S. at 93 (Roberts, J., concurring in
judgment).

without merit under either alternative formulation, his coun-sel was not ineffective in not asserting it at sentencing or on direct appeal.

### CONCLUSION

To summarize, in my view, the rule announced in *Miller* is procedural and does not apply to Mantich on collateral review. I would find that *Graham* has no application to Mantich's sentence of life imprisonment for first degree felony murder, a homicide, and that Mantich's alternative claim that his sentence was grossly disproportionate to his crime is procedurally barred. Because these claims are without merit, Mantich's trial and appellate counsel was not ineffective in failing to assert them. And because the files and records conclusively show that Mantich's motion for postconviction relief is without merit, the district court did not err in denying the requested relief without conducting an evidentiary hearing. I would affirm the decision of the district court.

Heavican, C.J., joins in this dissent.

———————————

State of Nebraska, appellee, v.
Eric A. Ramirez, appellant.
___ N.W.2d ___

Filed February 7, 2014.    No. S-11-486.

1. **Rules of Evidence.** In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in deter-mining admissibility.
2. **Rules of Evidence: Appeal and Error.** Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion.
3. **Judgments: Words and Phrases.** An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.
4. **Trial: Evidence: Appeal and Error.** An appellate court reviews the trial court's conclusions with regard to evidentiary foundation and witness qualification for an abuse of discretion.